Reade, J.
 

 It was admitted that the deceased, Annie Grunet, came to her death by poison prepared by Jane Grunet, for the purpose of killing Mrs. Grunet, the step-mother
 
 *234
 
 of Annie; and that the poisoned soup which Jane made for Mrs. Grunet was taken by Annie; and there was evidence tending to show that the prisoners were accessories before the fact. His Honor charged the jury that they, must be satisfied that the prisoners knew of Jane’s purpose to poison Mrs. Grunet, and that they aided, abetted, counselled or encouraged Jane in her purpose.
 

 There can be no doubt, that if A lay poison for B, and he or another take it, and death result, it is murder, both in the principal and accessories before the fact. Arch. Cr. PL, 216.
 

 There were two objections mainly relied on in this court for the prisoners.
 

 1. That the Judge intimated his opinion upon the facts against the prisoners in this:
 

 “The court then said, that every trial which involved the life of a human being was a matter in which every man, woman and child in the county and State had a direct interest. That our whole people were interested in the proper administration of justice, and that it was their duty to try this case by the law and the evidence, and render a fair and honest verdict. That if they had a reasonable doubt as to the guilt of the prisoners, or either of them, it was their duty, under the obligations which they had taken, to render a verdict accordingly; but if they were satisfied beyond a reasonable doubt upon the law and evidence, that the prisoners, or either of them, were guilty, and from any false sympathy rendered a verdict of not guilty, that the law said they were perjured men.”
 

 It is not stated that there was anything in the manner or emphasis of the charge against the prisoners; and the language itself does not indicate any leaning or bias. We must therefore take it that there was nothing in the manner of the Judge to give any peculiar character to his charge. Indeed, it is so grave an error in a Judge to invade the pro
 
 *235
 
 vince of the jury, that we do not feel at liberty to strain hi® language, in order to find a fault. Yet, when the error is, apparent, the consequence may be fatal to the prisoner, and we do not hesitate to correct, it. It is true his Honor did. not charge, in so many words, that if they convicted from prejudice it would be perjury, as much as if they acquitted from sympathy; but he did charge them that they must render a fair and honest verdict, and that if they had a reasonable doubt as to the guilt of the prisoners, it was their duty,
 
 under the obligation which they had taken,
 
 to render á verdict accordingly. The jury must have understood from this, that it would be contrary to their obligation, and therefore perjury, to find falsely either way, and as much one way as the other.
 

 2. That the proceedings were irregular, to the prejudice of the prisoners, in this:
 

 After the jury had been charged with the case for a considerable time, they desired to appear before the Judge in court. The Judge sent for the counsel on both sides at his chambers, and informed them that the jury had sent for him, and that he preferred that they should say nothing before the jury; but if they had any instructions to ask he would hear them then. The counsel on both sides asked for instructions. They then went into the court house, and the jury came in. The Judge then remarked from the bench that he would hear nothing from the prisoners or the State at that stage of the proceedings; that the case was then between him and the jury. He then asked the jury what they had to say, and they replied, “ nothing, except that we cannot agree.” He then informed the jury that the prisoners had requested him to give them certain instructions, which he stated but declined to give, and proceeded to give instructions different from what the prisoners desired. The instructions given were right in themselves, and the instructions asked for were wrong.
 

 
 *236
 
 We have considered this part of the case with unusual care, and we are unable to see that, in any reasonable probability, injury resulted to the prisoners; and therefore, we cannot disturb the verdict. But it is the first time we have been called upon to review a trial conducted after this manner. And the fact that it is new is against it. It was doubtless intended to correct an evil which is alleged to exist to some extent, i. e. that counsel sometimes seek an unfair advantage by some suggestion or argument to the Judge, which is really intended for the jury. The mere order or manner of conducting a trial must be almost entirely at the discretion of the Judge who holds the court. He may permit or refuse a witness to be recalled; he may allow evidence at any stage of the trial, and so he may charge or recharge the jury, and may undoubtedly allow, or refuse to allow, the interposition of counsel after the argument has been closed. But still it strikes us as somewhat restrictive of our hitherto indulgent practice to say to a prisoner, whose life is at stake, that though there may be error in the charge, yet no suggestion will be heard, however respectful, in the hearing of the jury. Our theory is, that counsel on both sides are
 
 in aid
 
 of the court and jury in arriving at the truth as to both law and fact. It is in contravention of that theory, as we hope it is of the practice of the profession, to suppose that they will capriciously interfere to embarrass the administration of justice.
 

 And it is suggested whether it were not better to visit with prompt and inexorable punishment mal-practice, if it oceur, than to seem to abridge our indulgent practice in
 
 favorem vitae.
 

 There is no error in the record. This opinion must be certified to the court below, that judgment and execution may be awarded.
 

 Per Curiam. There is no error.