STATE OF NORTH CAROLINA, RESPONDENT v. CLIFTON A. PEARCE, PETITIONER.

(Filed 14 January, 1966.)

**1. Constitutional Law § 30;   Criminal Law § 71—**
> Where more than two months transpires between defendant's incarceration on a capital charge and the appointment of counsel, admissions or confessions obtained from defendant during this interval after repeated questioning must be held incompetent. G.S. 15-4.1.

**2. Criminal Law § 139—**
> The Supreme Court will grant defendant a new trial when it appears upon the face of the record that defendant has been deprived of a constitutional right in the admission of an involuntary confession, notwithstanding no objection to the evidence appears in the record.

**3. Criminal Law § 26—**
> Statement of the solicitor that the State would not ask for conviction of the capital offense charged, but only for a less degree of the crime, is tantamount to a verdict of not guilty of the capital offense and, upon the granting of a new trial, the State may prosecute only for less degrees of the crime.

ON *certiorari* to review an order of *Johnson, J.,* entered at the May 10, 1965 Criminal Session, DURHAM Superior Court.

After a hearing under the Post Conviction Review Statute invoked by the petitioner, Clifton A. Pearce, the court concluded the petitioner's constitutional rights had not been violated in his trial at the May Term, 1961, upon the charge of rape. The court entered an order denying relief. This Court granted *certiorari* to review the order.

*T. W. Bruton, Attorney General, Theodore C. Brown, Staff Attorney for the State.*
*Wade H. Penny, Jr., for petitioner appellant.*

HIGGINS, J. The petitioner challenges the legality of his trial on three grounds: (1) He was not represented by counsel selected

and appointed by the court as required by law. (2) The trial court committed error in permitting Detective Morris to relate to the jury certain admissions the defendant made to the investigating officers after the indictment was returned and while he was being held in custody charged with a capital felony. (3) The attorney who represented him at the trial failed to follow his request that an appeal be taken to the State Supreme Court.

At the Post Conviction Hearing the petitioner was represented by his present counsel. The Assistant Solicitor, Thomas H. Lee, represented the State. The petitioner and Mr. C. Horton Poe, his trial counsel, testified. The court had before it in narrative form the evidence at the trial in which the defendant was convicted of an assault with intent to commit rape. We give here what appear to be the material parts of the records, the evidence, and the stipulations:

The alleged victim, Betty Louise Honeycutt, age 12 years, eight months, after returning with the defendant from the grocery store at about 9:40 on the night of February 18, 1961, told a member of her family a story which, if true, would raise at least an issue of the defendant's guilt of assault with intent to commit rape, if not of the completed offense. The defendant was called into the room where the girl repeated the story in his presence. This story the defendant denied. The victim's brother thereafter assaulted the defendant, inflicting injuries which required his hospitalization. The officers were notified and on the morning of February 19 questioned the defendant in the hospital. The defendant denied guilt. On February 21, 1961, the grand jury returned an indictment charging the defendant with the capital felony of rape. He was removed from the hospital to the jail where the officers questioned him—on how many occasions does not appear. However, at the second trial in May, 1961, Officer Morris testified: "I understand he was indicted for the capital crime of rape during February term. I do not remember whether it was March or February that I talked to him in jail. . . . It was in the day time when we talked to him in jail. There was no discussion in my presence either by me or the other detective to Mr. Pearce that it would be a lesser charge if he would tell it. I don't recall that any charge at all was discussed. We didn't compel him to make another statement. We didn't ask him to make another statement. We just asked him in the jail if he had anything else to say about it, if he still wanted to deny it. And, of course, he eventually came around and alleged that he had tried to have intercourse with her. This statement was made in the interrogation room of the detective bureau."

At all times during the questioning the prisoner was without counsel. However, some time in April, Solicitor Murdock requested

two members of the Durham Bar to confer with the defendant and ascertain if either would be satisfactory to him as his attorney. He was not satisfied with either. Then Mr. Murdock requested Mr. C. Horton Poe to confer with the prisoner who, after the conference, consented for Mr. Poe to represent him. Mr. Poe, during the latter part of April began preparations for the trial. He drew an order of appointment as counsel which Judge Williams signed on May 10, 1961.

Upon arraignment the Solicitor announced the State would not insist on a verdict of the capital felony, but only on a verdict of guilty of assault with intent to commit rape. The victim testified and a member of her family corroborated her story. Dr. Stokes, who examined her within a few hours after the alleged assault, testified in such manner as to raise serious doubt whether there was physical evidence of one of the essential elements necessary to make out a case of rape. The evidence warranted the Solicitor in refusing to try for the capital felony. At the conclusion of the first trial, at which Officer Morris did not testify, the jury was unable to agree. Judge Williams entered a mistrial and set the case for hearing the following week.

At the second trial Detective Morris testified as heretofore recited. The jury, after deliberating for a considerable time, returned a verdict of guilty of an assault with intent to commit rape. Judge Williams imposed judgment immediately that the defendant serve not less than 12 nor more than 15 years in the State's prison. The prisoner was remanded to jail immediately. Later that day he was transferred to Central Prison in Raleigh. Neither the defendant nor his counsel gave notice of appeal.

In passing on the critical question of law here presented, Mr. Poe's good faith and his diligent representation are not challenged. The difficulty we have with the case is that Mr. Poe was appointed only after such long delay as constituted a denial of the prisoner's statutory and constitutional right to the benefit of counsel as contemplated by the State Constitution and G.S. 15-4.1 in effect at the date of the trial:

> "When any person is bound over to the Superior Court to await trial for an offense for which the punishment may be death, the clerk of the superior court in the county shall, if he believes the accused may be unable to employ counsel, within five days notify the resident judge of the district, or any superior court judge holding the courts of the district, and request immediate appointment of counsel to represent the accused. If the judge is satisfied that the accused is unable to employ coun-

sel he shall appoint counsel to represent the accused as soon as practicable." G.S. 15-4.1 before amended by Chapter 1080, Session Laws of 1963.

In *State v. Simpson,* 243 N.C. 436, 90 S.E. 2d 708, this Court held the prompt appointment of counsel in a capital case was mandatory and required by the statute, by the State Constitution, and by the Due Process Clause of the 14th Amendment to the Constitution of the United States, citing *S. v. Hedgebeth,* 228 N.C. 259, 45 S.E. 2d 563; *In re Taylor,* 230 N.C. 566, 53 S.E. 2d 857; *S. v. Cruse,* 238 N.C. 53, 76 S.E. 2d 320; *S. v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778; *S. v. Collins,* 70 N.C. 241; 27 N. C. Law Review 422; Fourteenth Amendment to the Constitution of the United States; *Hedgebeth v. North Carolina,* 334 U.S. 806 (affirming *S. v. Hedgebeth, supra*); *Powell v. Alabama,* 287 U.S. 45; *Rice v. Olson,* 324 U.S. 786; *Wade v. Mayo,* 334 U.S. 672; *Palmer v. Ashe,* 342 U.S. 134.

By reason of the Superior Court's failure for two months to appoint counsel as it was its duty to do promptly, the prisoner was deprived of the protection from the pressure of questioning which an alert attorney could have vouchsafed him. In the absence of such protection at a time when he was under a charge which could cost his life, the officers continued their questioning which obviously was for the sole purpose of extracting damaging admissions. The defendant was in the county jail under Superior Court indictment. Nevertheless, the admission testified to by Mr. Morris was obtained in the interrogation room of the detective bureau where perhaps the surroundings were even less reassuring than his cell in the county jail. We hold the admissions to the officer finally obtained from him in this setting were so lacking in voluntary character as to make them inadmissible as evidence against him. True, the record fails to show objection to the officer's testimony. However, the court, of its own motion, should have excluded the statement as involuntary. Under the peculiar circumstances here disclosed, we hold the court's failure so to do was prejudicial error.

Since the case is to be heard again, we call attention to an intimation in the record that in the event of a new trial the State may elect to prosecute for the capital offense. When the State, acting through its constitutional officer, the solicitor, made the announcement that the State would not ask the jury to convict of the capital felony but only for the lesser offense of assault with intent to commit rape, the announcement was tantamount to a verdict of not guilty of the capital offense and prevents the State thereafter from prosecuting the prisoner for his life. The State may only prosecute

under the bill for an assault with intent to commit rape or any lesser offense embraced therein.

For the reasons assigned, we order a new trial because of the wrongful admission of the testimony of Officer Morris.

New trial.