STATE OF NORTH CAROLINA v. JAMES FRED ROGERS.

(Filed 20 March 1968.)

**1. Criminal Law § 30—**

Where the solicitor announces in open court that the State will not prosecute defendant for first degree murder as alleged in the indictment, the defendant may not be convicted of that offense but may be convicted of some lesser offense embraced within the charge.

**2. Homicide § 1—**

Where defendant intends to kill one person and kills an innocent bystander, he is guilty in the same degree as though he had killed the person intended.

APPEAL by defendant from *Hasty, S.J.*, September 4, 1967 Schedule A Criminal Session, MECKLENBURG Superior Court.

This criminal prosecution originated by bill of indictment which charged the defendant with the crime of murder in the first degree in the killing of Julie Elizabeth Coyle. The minutes of the Superior Court disclose that at the time of arraignment the solicitor for the State announced in open court the State "will not seek the capital

verdict but will seek a verdict of guilty to the charge of Murder in the Second Degree or Manslaughter or whatever the evidence might warrant. . . ."

Charles Graham, father of the deceased Julie Elizabeth Coyle, testified he knew the defendant, had talked to him on many occasions, sometimes by telephone, and knew his voice. About 6:00 in the afternoon of July 16, 1967 the witness answered the telephone and recognized the voice of the defendant, James Fred Rogers, as the caller. "He asked me was Elizabeth there. . . . I said 'Yes, and so am I.' He said, 'Say you are, you S.B.?' and I said, 'Yes, you S.B.' He said, 'I'll be up there in a few minutes and get every one of you' and I said, 'We'll try to be here.' "

At the end of the telephone conversation the witness Graham, his 22 pistol in his pocket, took a position on his front porch, which faced the city street. "When I saw Rogers I was standing almost in front of my daughter on the front porch. She was sitting in a swing." The defendant, alone in his convertible automobile with the top down, approached on Pegram Street. "When he got in front of my driveway is where he started shooting." The witness stated he fired two shots after the defendant had first fired a number of shots. After the shooting was over, the daughter said, "Daddy, have mercy; I'm hit; help me. She walked to my front door, . . . and slid down. That's the last words she ever spoke." She died as a result of a 22 caliber bullet wound. The bullet had entered at the shoulder, traveled down and back, and lodged in the spinal cord, just under the heart.

Pursuant to a telephone call, officers, within a few minutes after the shooting, went to a residence on Person Street where they were invited in and inquired for James Fred Rogers. Five or six persons were standing in the kitchen. The defendant placed his hand behind him. One of the officers ". . . heard something hit the floor . . . I knew where the sound came from. I looked behind the defendant on the kitchen floor and saw the gun." The officer examined the weapon, a 22 pistol with 4 spent shells and one live shell in the weapon (evidently a revolver).

The defendant testified as the only witness for the defense. He said the deceased was his sweetheart. He had talked to her on the porch and she told him her father was in the kitchen and she could not go with him while he was up. He went to King's place nearby, bought a beer, which he and Forrest Pope drank. He started to drive home and as he passed Charles Graham's house, Graham ran out on the front porch and started shooting at him and he shot over Graham's head "to spoil his aim" and continued to drive towards home. He

saw Elizabeth Coyle scuffling with her father trying to take the gun from him.

The jury returned a verdict of guilty of murder in the second degree. From the judgment of imprisonment for not less than 20 years, nor more than 25 years, the defendant appealed.

*T. W. Bruton, Attorney General; Ralph Moody, Deputy Attorney General, for the State.*

*T. O. Stennett for defendant appellant.*

HIGGINS, J. As a result of the solicitor's announcement, the defendant could not be convicted of murder in the first degree, but of some lesser offense embraced within that charge. *State v. Miller,* 272 N.C. 243. The verdict of guilty of murder in the second degree was within the indictment.

According to the State's evidence, the defendant called Charles Graham, father of Elizabeth Coyle, over the telephone and made threats against all of the family. Graham armed himself and waited on the porch. His daughter, Julie Elizabeth Coyle, was sitting in a swing to her father's right. The defendant, as he had threatened, appeared in his automobile on Pegram Street and started shooting at Graham, who returned the fire. A shot struck Elizabeth Coyle as she was seated in the swing. She died within a few minutes.

The defendant testified he happened to pass the home of Charles Graham, who began the shooting. The defendant thereafter fired only to spoil Graham's aim. As he continued by the Graham home, he saw Elizabeth Coyle struggling with her father, apparently in an effort to prevent further shots.

The jury accepted the State's evidence which disclosed the defendant appeared at the Graham home, as he had threatened to do, and began shooting at Graham. Apparently the jury was not impressed by the defendant's testimony that he happened to be passing on his way home when Graham began shooting, and he returned the fire only to spoil Graham's aim.

The day was Sunday. The time, place and readiness of both participants to do battle on sight indicate prior preparation as contended by the State, rather than a meeting by accident as contended by the defendant. According to Graham's story, he was defending his home and his family against the defendant's threat that "he would be up there in a few minutes and get every one of you". Had the defendant killed Graham, a conviction of murder would have been warranted. If in the attempt to kill Graham he accidentally killed Elizabeth Coyle, a conviction of murder would likewise be justified.

"Where A. aims at B. with malicious intent to kill B., but by the same blow unintentionally strikes and kills C., this has been held by authorities of the highest rank to be murder. *S. v. Benton,* 19 N.C. 196; *S. v. Fulkerson,* 61 N.C. 233; *S. v. Cole,* 132 N.C. 1069." *State v. Sheffield,* 206 N.C. 374, 174 S.E. 105. See also *State v. Burney,* 215 N.C. 598, 3 S.E. 2d 24. The rule is stated in 26 Am. Jur., Homicide, Section 35, Page 170: "The fact that the homicidal act was directed against or intended to effect the death of one other than the person killed does not relieve the slayer of criminal responsibility. . . . Under this rule the fact that the bystander was killed instead of the victim becomes immaterial and the only question at issue is what would have been the degree of guilt had the result intended been accomplished. . . . The malice or intent follows the bullet."

We have assumed the defendant intended to kill Graham and accidentally killed Elizabeth Coyle. However, this assumption is favorable to the defendant. He may have intended to kill Elizabeth Coyle and accomplished that purpose, and thus committed an even more reprehensible offense.

The several questions on the part of the court do not appear objectionable as going beyond the purpose of clarification. Likewise the court's statement of contentions and its instructions as to the principles of law applicable to the facts in evidence are free from valid objection. In the trial and judgment of the Superior Court, we find

No error.