STATE OF NORTH CAROLINA v. SUSAN MYRA HICKEY

No. 516A85

(Filed 12 August 1986)

**1. Criminal Law § 30— State's announcement of intent to proceed on lesser charge—not binding before jeopardy attaches**

The trial court did not err by denying defendant's motion to preclude the State from proceeding on first degree murder where the prosecutor had stated at arraignment that the State did not intend to seek a conviction for first degree murder unless new evidence was discovered. Such an announcement by the district attorney at any time prior to trial does not immediately have the effect of a verdict of acquittal, but becomes binding on the State and tantamount to acquittal only when jeopardy attaches as a result of a jury being impaneled and sworn to try the defendant.

**2. Constitutional Law § 31— denial of private investigator—no error**

The trial court did not err in a prosecution for first degree murder by failing to appoint an investigator for defendant where defendant argued only that an investigator could investigate the State's key witness and that the investigator could discover facts that might show inconsistencies or corroborating facts or circumstances to buttress defendant's case; moreover, defendant and the key witness both testified about the length and closeness of their friendship and it was unlikely that an investigator would have discovered new evidence. N.C.G.S. § 7A-454, N.C.G.S. § 7A-450(b).

**3. Homicide § 30— first degree murder—refusal to instruct on second degree murder or involuntary manslaughter—no error**

The trial court did not err in a prosecution for first degree murder by denying defendant's request for jury instructions on the lesser included offenses of second degree murder and involuntary manslaughter where a review of the evidence leads to the conclusion that defendant either premeditated and deliberated and then murdered her husband or accidentally shot her husband as she contended throughout her trial. N.C.G.S. § 14-17.

**4. Criminal Law § 102.6— closing argument—prosecutor's comment on conscience of community—not grossly improper**

A prosecutor's closing argument in a first degree murder trial was not so grossly improper as to require the trial court to act *ex mero motu* where the prosecutor commented on the conscience of the community and the need for punishment.

**5. Criminal Law § 73.1— hearsay—admission not prejudicial**

The trial court did not commit reversible error in a prosecution for first degree murder by admitting the hearsay testimony of a friend of the victim that the victim had complained two months before the shooting that defendant had threatened to kill him where other similar evidence of premeditation and deliberation was properly admitted. N.C.G.S. § 8C-1, Rules 803 and 804.

APPEAL by the defendant from judgment entered by *Lewis, J.*, at the 15 April 1985 Criminal Session of Superior Court, MADISON County, after change of venue from MITCHELL County.

The defendant was indicted on 3 July 1984 by the Mitchell County Grand Jury for the murder of her husband, David Hickey. She was tried at the 28 January 1985 Special Session of Superior Court, Mitchell County. Upon determining that the jury was deadlocked, the court declared a mistrial on 20 February 1985. Thereafter, the court ordered a change of venue to Madison County.

The defendant's second trial was held in Madison County and resulted in her conviction of first degree murder. Having determined that there was no evidence of any aggravating factors, the trial court imposed a life sentence. The defendant appealed her conviction for first degree murder and the resulting life sentence to the Supreme Court as a matter of right. Heard in the Supreme Court 14 May 1986.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant has brought forward several assignments of error in which she contends that: (1) the trial court committed reversible error in denying her motions to preclude the State from proceeding on a first degree murder charge; (2) the trial court erred in failing to appoint an investigator to aid in her defense; (3) the trial court committed reversible error in refusing her request for jury instructions on the lesser included offenses of second degree murder and involuntary manslaughter; (4) portions of the prosecutor's closing arguments were grossly improper and substantially prejudiced the defendant; and (5) the trial court committed reversible error in overruling her objections to hearsay testimony of witness Scott Pitman. We find no error.

The defendant, Susan Hickey, and the victim, David Hickey, had been married since 16 August 1980. Two children lived with the couple in a mobile home in Spruce Pine: Jamie, the defendant's eleven-year-old son from a previous marriage, and Charles, the couple's three-year-old son.

The State's evidence tended to show that in the early morning hours of 17 May 1984, the defendant shot her husband, David Hickey, while he was asleep in bed. The victim first was shot in the left side of his chest with a Smith and Wesson .38 caliber revolver. That shot caused a "contact" wound. The bullet penetrated both of the victim's lungs and his heart and lodged in his back. The victim also was shot a second time in the back. The second bullet moved in an upward path toward his neck. Dr. John McLeod opined that death resulted from massive internal bleeding from the chest wound and not from the second gunshot wound.

After the shooting occurred, the defendant did not attempt to assist the victim. She stepped over his body several times while dressing and then took her two children to her mother's house. When the defendant got to her mother's house, she told her mother that an accident had occurred and she thought her husband was dead. The defendant did not seek any emergency assistance for her husband. When the defendant later returned to her home, she checked his pulse and found "no response." She then called the local chief of police.

In her statement to the police, the defendant stated that the victim went to bed and placed a pistol under his pillow. When she thought he was asleep, she walked around to his side of the bed and reached under the pillow to get the pistol. The gun went off as the victim grabbed it and tried to pull it from her. After the gun fired, the victim jumped out of bed and said: "I'll kill Jamie." When he started toward the door, the defendant fired the gun. The victim then fell to the floor.

Ella Jo Teague, the defendant's close friend, testified that she saw the defendant at the police station after the shooting. The defendant told her that she had waited until her husband went to sleep, and then she shot him. A few days later, Teague visited the defendant at her home. On that occasion, the defendant stated that "she had never slept better" and "that if she had to pull any time it was worth it." Teague also testified that in April 1984 the defendant had stated she planned to kill her husband with pills and alcohol and wondered what quantity would be lethal. A few days after that conversation, the defendant stated that her mixture did not work and the victim had only gotten sick.

Bruce Jarvis, the State Bureau of Investigation agent, testified that during his investigation of the bedroom, he discovered a hole with a surrounding burnt area in the top sheet of the bed. He also discovered two holes in a quilt that was on the bed. Steven Carpenter, a firearms expert with the State Bureau of Investigation, testified that the gunshot residue pattern around the holes in the sheet and quilt were characteristic of a contact wound.

The defendant testified at trial that the victim, her husband, returned home in the early morning hours of May 17th. The victim became angry at the defendant's son Jamie and the couple argued. The defendant then went to bed and pretended to be asleep. She heard the victim cock a pistol and place it under his pillow. The defendant waited until he was asleep, walked around to his side of the bed, and attempted to pull the pistol out from under the pillow. As she grabbed the handle and pulled the pistol out, the victim woke up and grabbed the pistol. The pistol then discharged. The defendant testified she had her hand on the handle when the gun discharged. The victim rolled over to the side of

the bed and was sitting on the bed, "crouched over." The victim then said that he was going to kill Jamie. As the victim "started to raise up to go toward the door," the defendant "raised the gun and shot." The defendant took the children to her mother's house because she did not want them to see the victim. She returned and then called Police Chief Ray Gunter. The defendant denied making any of the statements Teague had described. The defendant also denied planning to kill her husband by mixing pills and alcohol.

Other facts pertinent to the determination of the issues raised on appeal are set forth hereinafter as part of the discussion of those issues.

[1]  By her first assignment of error, the defendant contends that the trial court committed reversible error in denying her motions to preclude the State from proceeding against her on the charge of first degree murder. We do not agree.

The defendant was indicted on 3 July 1984 for the murder[1] of her husband. On 1 October 1984, the defendant appeared in Superior Court, Mitchell County, for arraignment and for the hearing of pretrial motions. During the arraignment the district attorney announced that the State did not intend to seek a conviction for first degree murder but would seek a conviction for second degree murder, unless new evidence was discovered which would warrant trying the defendant for first degree murder. In light of the prosecutor's announcement, Judge Lamm denied the defendant's motions for individual *voir dire* and sequestration of the jury, but did so without prejudice to the defendant's right to renew the motions should the State notify her of its intent to seek a verdict of guilty of first degree murder. On 27 December 1984, the defendant received written notice from the district attorney that the State intended to bring her to trial for first degree murder.

On 31 December 1984, the defendant filed a "MOTION IN OPPOSITION TO THE STATE'S DESIRE TO PROCEED ON FIRST DEGREE MURDER." A hearing was held on that motion on the same day,

---

1. The indictment was drawn according to N.C.G.S. § 15-144 and was sufficient to support a verdict of guilty of either first or second degree murder or manslaughter. *State v. Talbert*, 282 N.C. 718, 194 S.E. 2d 822 (1973).

and Judge Gudger entered an order finding *inter alia* that during the October arraignment of the defendant:

> the Court asked the Assistant District Attorney, Mr. Wilson 'Does the State intend to proceed on the charge of second degree murder?' To which, Mr. Wilson, the Assistant District Attorney, answered: 'Your Honor, at this time our intent is to proceed on second degree murder. We would reserve the right that if before the trial new evidence should come to light that we could change our mind upon proper notice to the defendant that we now desire to proceed on first. As of this time, as of this day, Your Honor, we intend now to plead—to proceed on second. Again, we would, if something changed, if new evidence should come forth, then we would reserve the right to give proper notice to the defendant and put them on notice that we did at that time intend to proceed on first.'
>
> . . . .
>
> That subsequent to the October Session of this Court and on or about December 22, 1984, the District Attorney received information indicating the availability of one or more witnesses to threats made by the defendant against the deceased . . . .

Based on such findings, Judge Gudger concluded that the statement of the district attorney "did not amount in law to an election on the part of the State not to proceed to trial on a charge of first degree murder if further evidence was discovered tending to support such charge . . . ." As a result he denied the defendant's motion opposing trial on a charge of first degree murder but ordered that her other pretrial motions be reconsidered in light of his order.

The defendant initially was tried for first degree murder at the 28 January 1985 Special Session of Superior Court, Mitchell County. The jury being unable to agree on a verdict, the trial court declared a mistrial and subsequently ordered a change of venue to Madison County. The defendant was retried for first degree murder at the 15 April 1985 Session of Superior Court, Madison County, and again moved to prevent the State from proceeding against her on the first degree murder charge. Judge

Lewis concluded that the previous order entered by Judge Gudger was the law of the case and denied the motion.

The defendant argues that the district attorney's announcement during the arraignment that the State intended "at this time" to bring her to trial for second degree murder was a binding election by the State and equivalent to a verdict of not guilty on the first degree murder charge. The defendant argues that as a result, considerations of due process and double jeopardy prevented the State from trying her thereafter on the first degree murder charge.

In *State v. Pearce*, 266 N.C. 234, 145 S.E. 2d 918 (1966), the defendant was charged with the then capital felony of rape. At arraignment the solicitor[2] announced that the State would not seek a verdict on the capital felony but would only seek to convict the defendant of the lesser included offense of assault with intent to commit rape. The defendant's first trial on the lesser charge ended in a mistrial. At his second trial for the lesser offense, the defendant was convicted. This Court ordered a new trial on the ground that the defendant's confession had been involuntary and improperly admitted into evidence. We also said in *obiter dictum*, however, that:

> When the State, acting through its constitutional officer, the solicitor, made the announcement that the State would not ask the jury to convict of the capital felony but only for the lesser offense of assault with intent to commit rape, the announcement was tantamount to a verdict of not guilty of the capital offense and prevents the State thereafter from prosecuting the prisoner for his life.

266 N.C. at 237, 145 S.E. 2d at 921. In a later case, we unfortunately relied upon that *obiter dictum* in *Pearce* and stated:

> When, upon arraignment, or thereafter in open court, and in the presence of the defendant, the Solicitor announces the State will not ask for a verdict of guilty of the maximum crime charged but will ask for a verdict of guilty on a designated and included lesser offense embraced in the bill, and

2. The constitutional office of district attorney was denominated "solicitor" in North Carolina until 1973. *See* N.C.G.S. § 7A-66.1 (1981).

the announcement is entered in the minutes of the Court, the announcement is the equivalent of a verdict of not guilty on the charge or charges the Solicitor has elected to abandon.

*State v. Miller*, 272 N.C. 243, 246, 158 S.E. 2d 47, 49 (1967).

The foregoing quoted statements from *Miller* and *Pearce* unfortunately were overbroad and inaccurate, and we now expressly disavow and reject them. We also expressly disavow and reject similar statements in other cases wherein we relied upon the quoted statements from *Miller* and *Pearce* which we now conclude were erroneous. *E.g., State v. Allen*, 279 N.C. 115, 118-19, 181 S.E. 2d 453, 455 (1971); *State v. Rogers*, 273 N.C. 330, 332, 159 S.E. 2d 900, 901 (1968); *State v. Overman*, 269 N.C. 453, 472, 153 S.E. 2d 44, 60 (1967). In so doing, we conclude that other cases decided by this Court—some of them cases relied upon in *Miller* —did not compel the statements in *Pearce* and *Miller* previously quoted in this opinion. *E.g., State v. Locklear*, 226 N.C. 410, 38 S.E. 2d 162 (1946); *State v. Dove*, 222 N.C. 162, 22 S.E. 2d 231 (1942); *State v. Wall*, 205 N.C. 659, 172 S.E. 216 (1934); *State v. Gregory*, 203 N.C. 528, 166 S.E. 387 (1932); *State v. Brigman*, 201 N.C. 793, 161 S.E. 727 (1931); *State v. Spain*, 201 N.C. 571, 160 S.E. 825 (1931); *State v. Hunt*, 128 N.C. 584 (431 in the revision), 38 S.E. 473 (1901); *State v. Sorrell*, 98 N.C. 738, 4 S.E. 630 (1887); *State v. Taylor*, 84 N.C. 773 (1881).

The rule that the State has the authority to make a binding election to abandon the prosecution of some offenses supported by an indictment and to pursue instead other counts in that indictment or lesser degrees of offenses charged in that indictment was first expressly stated in *State v. Taylor*, 84 N.C. 773 (1881). At the close of the evidence at trial in *Taylor*, the solicitor took an untimely *nolle prosequi*[3] as to one of several counts for which the defendant was being tried. This Court stated:

Strictly, a *nolle prosequi* can only be entered by the prosecuting officer, before the jury are impaneled, or after the ren-

---

3. A *nolle presequi* was formerly used by a solicitor [now district attorney] to announce that he did not wish to proceed further with a particular prosecution and would not at that time prosecute the defendant on that charge. *Wilkinson v. Wilkinson*, 159 N.C. 265, 266-67, 74 S.E. 740, 741 (1912). *See Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1 (1967).

dition of a verdict against the defendant. During the trial it can only be done with his consent. While then, in strictness, a *nol. pros.* could not be entered, and the count thus reserved for a future prosecution of the defendant . . . the action of the solicitor must be deemed an election to proceed on the other counts and an assent to a verdict of acquittal on that.

*Id.* at 775. *See State v. Wall,* 205 N.C. 659, 660, 172 S.E. 216, 217 (1934); *State v. Brigman,* 201 N.C. 793, 794, 161 S.E. 727 (1931).

In *State v. Hunt,* 128 N.C. 584 (431 in the revision), 586 (432 in the revision), 38 S.E. 473, 474 (1901), we indicated that when the prosecutor announces at arraignment or any other time prior to trial that he intends to seek a conviction for second degree murder, his announcement is "in effect a verdict of acquittal as to first degree murder." However, in *Hunt* as in the other cases in which similar statements have been made by this Court, the prosecutor had not merely announced prior to trial that he would proceed only on a lesser included offense or on fewer than all counts in the indictment. In those cases the prosecutor had gone further and actually prosecuted the defendant for the lesser offense or for fewer than all counts in the bill. The defendant in each of those cases was *placed in jeopardy* and actually *convicted* of the lesser offense. *E.g., State v. Allen,* 279 N.C. 115, 181 S.E. 2d 453 (1971) (tried for lesser included offense); *State v. Rogers,* 273 N.C. 330, 159 S.E. 2d 900 (1968) (same); *State v. Miller,* 272 N.C. 243, 158 S.E. 2d 47 (1967) (same); *State v. Pearce,* 266 N.C. 234, 145 S.E. 2d 918 (1966) (same); *State v. Gregory,* 203 N.C. 528, 166 S.E. 387 (1932) (same); *State v. Brigman,* 201 N.C. 793, 161 S.E. 727 (1931) (tried on less than all counts in the indictment); *State v. Hunt,* 128 N.C. 584 (431 in the revision), 38 S.E. 473 (1901) (tried for lesser included offense, but opinion also discusses situation where defendant tried for less than all the separate counts in an indictment); *State v. Taylor,* 84 N.C. 773 (1881) (tried on less than all counts in the indictment). Therefore, to the extent that statements in our previous opinions can be construed as meaning that such an announcement prior to trial by the prosecutor has the *immediate* effect of a verdict of acquittal of the greater offense charged or acquittal of counts contained in the indictment but not to be prosecuted, those statements are mere *obiter dicta* and not binding authority. The results reached in those cases were required by our longstanding recognition of the rule that:

" 'If the jury find the defendant guilty on one count,' says Mr. Wharton, 'and say nothing in their verdict concerning other counts, it will be equivalent to a verdict of not guilty as to them.' " *State v. Taylor*, 84 N.C. at 775.

Further, at the time the cases relied upon in *Miller* were decided, the question of whether such an announcement by the prosecutor was an *immediately* binding election by the State was a question more theoretical than real. At the time those cases were decided, defendants ordinarily were arraigned immediately prior to the jury being impaneled and jeopardy attaching. More recently, however, our procedures have been amended by statute to expressly provide that: "When a defendant pleads not guilty at an arraignment . . . he may not be tried without his consent in the week in which he is arraigned." N.C.G.S. § 15A-943(b) (1983). As a practical matter under current procedures, the arraignment ordinarily precedes the trial at which the defendant is placed in jeopardy by several weeks or months.

We conclude that justice does not require the rule stated in *Miller* and *Pearce*: that a prosecutor's pre-trial announcement of his election to seek conviction only for some of the offenses charged in the indictment or only for lesser included offenses has the *immediate* effect of an acquittal of the other or greater charges in the indictment. The better rule which we now adopt for this jurisdiction is that such an announcement by the district attorney at any time prior to trial does not immediately or automatically have the effect of a verdict of acquittal. Instead, such an announced election by the district attorney becomes binding on the State and tantamount to acquittal of charges contained in the indictment but not prosecuted at trial *only* when *jeopardy has attached* as the result of a jury being impaneled and sworn to try the defendant. *See State v. Hunt*, 128 N.C. 584 (431 in the revision), 38 S.E. 473 (1901); *State v. Sorrell*, 98 N.C. 738, 4 S.E. 630 (1887); *see also State v. Shuler*, 293 N.C. 34, 42, 235 S.E. 2d 226, 231 (1977). Until that time the district attorney may withdraw his previously announced election and prosecute the defendant for all crimes charged in the indictment. We emphasize, however, that proper notice of the withdrawal and new election to prosecute must be given the defendant sufficiently in advance of trial to insure the defendant's rights of due process and effective representation of counsel. Our trial courts are more than capable

of insuring the protection of such rights and have full authority to grant defendants continuances or take other appropriate actions to see that such rights are scrupulously observed and provided.

Assuming *arguendo* that the trial court's conclusion that the assistant district attorney's announcement in the present case "did not amount in law to an election on the part of the State" was incorrect, the "election" was withdrawn before the defendant had been placed in jeopardy. Actual notice of this fact was received by the defendant more than three months prior to the trial which resulted in her conviction and led to this appeal. The defendant has shown nothing tending to indicate that the State's withdrawal of its "election" with notice to her in any way hampered her defense or denied her due process or effective representation of counsel. To the contrary, the transcript, record and briefs before this Court clearly reveal that she had ample time to prepare her defense and that her representation by counsel, before and during trial and on appeal, was entirely in keeping with the highest standards of the legal profession. This assignment of error is without merit.

[2]  By her next assignment of error, the defendant contends that her due process rights guaranteed by the fourteenth amendment to the Constitution of the United States were violated by the trial court's failure to appoint an investigator to aid in her defense. The defendant moved for the appointment of an investigator to investigate the background of the State's key witness, Ella Jo Teague. In support of her motion, the defense counsel argued the investigator was needed to discover "[h]ard core facts . . . that may show extreme inconsistencies, or corroborating facts or circumstances that buttress the case of the Defendant . . . cold hard evidentiary facts of whatever nature, the history of one person, or how one person has either conducted one's self, testified in prior occasions, said things to other people . . . ." We conclude that the trial court properly refused to appoint an investigator for the defendant.

N.C.G.S. § 7A-454 provides that the trial court has the discretion to approve a fee for the service of an expert witness who testifies for an indigent defendant. The State shall pay the fees and expenses of the expert witnesses. N.C.G.S. § 7A-450(b) provides that "[w]henever a person, under the standards and procedures set out in this Subchapter, is determined to be an indi-

gent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." *See State v. Penley*, 318 N.C. 30, 347 S.E. 2d 783 (1986); *State v. Artis*, 316 N.C. 507, 342 S.E. 2d 847 (1986).

The recent case of *Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed. 2d 53 (1985) dealt with the issue of whether an indigent defendant was constitutionally entitled to the services of an appointed psychiatrist. The Court set forth three factors relevant to the determination of whether "the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense." 470 U.S. at 77, 84 L.Ed. 2d at 62. The three factors to be considered are: (1) the private interest that will be affected by the State; (2) the governmental interest that will be affected if the expert assistance is provided; and (3) the probable value of the assistance that is sought and the risk of an erroneous deprivation of the affected interest if the assistance is not provided. 470 U.S. at 77, 84 L.Ed. 2d at 62; *State v. Penley*, 318 N.C. 30, 347 S.E. 2d 783 (1986); *State v. Johnson*, 317 N.C. 193, 344 S.E. 2d 775 (1986).

The *Ake* decision concerns cases in which "the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense." 470 U.S. at 83, 84 L.Ed. 2d at 66. *Ake* is limited to those cases in which the defendant makes a threshold showing of specific necessity for the assistance of the expert he sought to have appointed. *State v. Penley*, 318 N.C. at 51, 347 S.E. 2d at 795; *State v. Johnson*, 317 N.C. at 199, 344 S.E. 2d at 775. The *Ake* decision is consistent with our decisions that hold the defendant must show a particularized need for the requested expert. *State v. Penley*, 318 N.C. at 51, 347 S.E. 2d at 795-796; *State v. Artis*, 316 N.C. 507, 342 S.E. 2d 847 (1986).

In the present case, the defendant has failed to make a threshold showing of specific necessity for the assistance of an investigator. In support of her motion, the defendant argued only that an investigator could investigate the State's key witness, Ella Jo Teague. We assume the purpose of the investigation would be to discover facts that could be used to impeach the

testimony of the witness. Although Teague was a key witness who provided evidence to support the elements of premeditation and deliberation, the mere general desire to search for possible evidence which might be of use in impeaching her was not such a "significant factor" in the defendant's defense under *Ake* as to justify the appointment of an investigator.

The defendant offered only "undeveloped assertions that the requested assistance would be beneficial." *Caldwell v. Mississippi*, 472 U.S. 320, ---, 86 L.Ed. 2d 231, 236, n. 1 (1985). In support of the motion, the defense counsel argued that the investigator could discover "[h]ard core facts . . . that *may* show extreme inconsistencies, or corroborating facts or circumstances that buttress the case of the Defendant . . . ." (emphasis added). As we have stated previously "Mere hope or suspicion that such evidence is available will not suffice." *State v. Tatum*, 291 N.C. 73, 82, 229 S.E. 2d 562, 568 (1976).

We also note that the defendant and Teague both testified to the length and closeness of their friendship for one another. The defendant was given ample opportunity to cross-examine Teague and did attempt to impeach Teague with evidence of her struggle with anorexia nervosa. Given the length and closeness of the defendant's friendship with Teague, it was most unlikely that the assistance of an investigator would have been of any real value in uncovering new evidence of use in the preparation of her defense. The trial court properly denied the defendant's motion.

[3] By her next assignment of error, the defendant contends that the trial court erred in denying her request for jury instructions on the lesser included offenses of second degree murder and involuntary manslaughter. We find no error.

N.C.G.S. § 14-17 defines murder in the first and second degree. N.C.G.S. § 14-17 provides in pertinent part:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of [specified felonies] . . . shall be deemed to be murder in the first degree . . . All other kinds of murder . . . shall be deemed murder in the second degree . . . .

Involuntary manslaughter is "the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life or (2) by an act or omission constituting culpable negligence." *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E. 2d 905, 916 (1978).

In *State v. Strickland*, 307 N.C. 274, 290-91, 298 S.E. 2d 645, 656 (1983), we disavowed the rule that the trial court is required to instruct on second degree murder in all first degree murder cases in which the State relies on the elements of premeditation and deliberation. In determining whether the trial court should instruct on lesser included offenses, the test is "whether the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged." 307 N.C. at 283, 298 S.E. 2d at 652. The trial court is required to charge on a lesser offense only when there is evidence to support a verdict finding the defendant guilty of such lesser offense. 307 N.C. at 284, 298 S.E. 2d at 652. "However, when all the evidence tends to show that defendant committed the crime charged and did not commit a lesser included offense, the court is correct in refusing to charge on the lesser included offense." *State v. Gerald*, 304 N.C. 511, 520, 284 S.E. 2d 312, 318 (1981).

In the present case, the defendant failed to give a complete statement of facts as required by our rules. N.C. App. R. 28(b)(4). The State did not choose to "make a restatement" of facts. N.C. App. R. 28(c). After reviewing the entire transcript, we conclude that the evidence required either a verdict of guilty of first degree murder or a verdict of not guilty. Therefore, jury instructions on lesser included offenses would have been improper.

The State's evidence tended to show *inter alia* that the defendant first attempted to kill her husband by giving him a mixture of pills and alcohol. The attempt failed, only making her husband sick. In the early morning hours of May 17th, the defendant's husband was shot twice. The chest wound—a contact wound —was the cause of death. The defendant told her best friend, Ella Jo Teague, that she had waited until her husband was asleep and shot him. She stated she "had never slept better" and if she "had to pull any time it was worth it." The defendant never called any emergency assistance for her husband. After the shooting, she

dressed and took her children to her mother's house. It was only after she returned from her mother's house that she called the police.

The defendant testified at trial that her husband, the victim, had placed a cocked gun under his pillow. He was shot accidentally as the defendant tried to pull the gun from under the pillow. Uncontroverted expert testimony indicated that this shot was the ultimate cause of death. The victim then threatened to kill the defendant's son Jamie. "As he started to raise up to go toward the door, I raised the gun and shot." The defendant testified that she did not recall pulling the trigger. On cross-examination, the defendant stated unequivocally that the second shot was also accidental.

A review of the evidence leads to the conclusion that the defendant either premeditated and deliberated and then murdered her husband, or she accidentally shot her husband as she contended throughout her trial. If the jury disbelieved the defendant's story, the only possible conclusion that could be reached was that she planned to kill her husband, then waited for him to go to bed and killed him in his sleep. The trial court properly refused to submit the lesser included offenses of second degree murder and involuntary manslaughter.

[4] By her next assignment of error, the defendant contends that portions of the prosecutor's closing argument were grossly improper and substantially prejudiced the defendant, requiring a new trial. The defendant complains of the following comments made by the prosecutor:

> I couldn't help but think during this week that as Susan Hickey's team of lawyers stood here before you and they've argued this contention, they've argued that contention, they've argued that you should turn her loose, and the Court sat up here and they've made every effort to protect the rights of this Defendant, to make sure she got a fair trial, everything has been done. Where, where, where, where were David Hickey's lawyers on that night when she executed him? Where was a Judge to sit and determine whether or not she should have executed on him on that early morning? David Hickey didn't have that. He was tried and executed right there.

> *And the conscience of a community and the conscience of a people is outraged it requires punishment, befitting the terrible deed.* If we fail to punish those who have committed terrible outrageous crimes then our society, Ladies and Gentlemen, does not long exist. Our flag will not long stand high. Our streets will not long be safe when we send murderers out of the Courtroom with their guns back in their hand, our society is almost finished.
>
> It's a terrible, terrible thing she did. But it's now up to you. You must be strong. You must do what is necessary. You must reach back for David Hickey now that she can't, and you must demand justice from this woman. Your course is set, your way is clear, justice demands punishment. When our juries stop doing justice, when murderers walk out of the Courtroom free, then we may as well hang a wreath on the Courtroom door, shut it and lock it and go home, because the very basis of our system of living, the government is gone.

(Emphasis added.)

The defendant contends that the prosecutor impermissibly asked the jury to consider the conscience of the community and that the argument traveled outside of the record. The defendant relies on *State v. Scott*, 314 N.C. 309, 333 S.E. 2d 296 (1985) which involved a defendant's trial and conviction for involuntary manslaughter and driving under the influence of alcohol. This Court granted a new trial because the trial court overruled the defendant's timely objection and allowed the prosecutor to improperly appeal to the jury to convict the defendant "because impaired drivers had caused other accidents." 314 N.C. at 312, 333 S.E. 2d at 298. We also interpreted the prosecutor's argument as "telling the jury that the citizens of the community sought and demanded conviction and punishment of the defendant." *Id.*

The defendant is required to object to improper comments made during closing arguments. *State v. Locklear*, 294 N.C. 210, 215, 241 S.E. 2d 65, 68 (1978). Failure to object ordinarily constitutes a waiver. *Id.* However, where the closing remarks are grossly improper, the trial court should correct the abuse *ex mero motu. Id.; State v. Jones*, 317 N.C. 487, 346 S.E. 2d 657 (1986).

Since the defendant in the case *sub judice* failed to object to the prosecutor's comments, our consideration is strictly limited to the question of whether the prosecutor's argument was so grossly improper as to require the trial court to act *ex mero motu*. We do not consider or decide whether it would have been error for the trial court to have overruled an objection to the argument of the prosecutor. We conclude only that the prosecutor's comments did not rise to the level of gross impropriety. *See generally State v. Scott*, 314 N.C. 309, 333 S.E. 2d 296 (1985). We find no error.

[5]  By her final assignment of error, the defendant contends that the trial court committed reversible error by admitting the hearsay testimony of Scott Pitman. Pitman, a friend of the deceased victim, testified that two months prior to the shooting, the victim complained that the defendant had threatened to kill him. The trial court immediately instructed the jury that the testimony was offered solely for the purpose of its consideration on the questions of premeditation and deliberation.

The defendant contends that the hearsay testimony does not fall within any of the exceptions to the hearsay rule enumerated in N.C.G.S. § 8C-1, Rule 803 and Rule 804. The defendant further contends that the testimony lacked "substantial guarantees of trustworthiness" to allow its admission under the residual exception of Rule 804(b)(5).

We assume *arguendo* that the trial court erred in allowing the hearsay testimony of Scott Pitman. However, the erroneous admission of hearsay is not always so prejudicial as to require a new trial. *State v. Sills*, 311 N.C. 370, 378, 317 S.E. 2d 379, 384 (1984). The defendant must still show that there was a reasonable possibility that a different result would have been reached at trial if the error had not been committed. *State v. Sills*, 311 N.C. at 378, 317 S.E. 2d at 384; *see* N.C.G.S. § 15A-1443(a) (1983).

In the present case, the defendant has not shown how she was prejudiced by admission of the hearsay. The defendant maintained throughout the trial that the shooting was an accident. However, Ella Jo Teague testified to statements made by the defendant that would support the elements of premeditation and deliberation. In light of the other similar evidence of premeditation and deliberation admitted properly against the defendant, we are not persuaded that Pitman's testimony, even if admitted im-

properly, requires a new trial. *Id.* We find no merit in this assignment of error.

For the reasons stated herein, we conclude that the defendant received a fair trial free from prejudicial error.

No error.