STATE OF NORTH CAROLINA
v.
KIMBERLY ANN EDWARDS
No. COA05-785
North Carolina Court of Appeals
Filed February 21, 2006
This case not for publication
Cumberland County No. 03 CRS 71422.
Attorney General Roy Cooper, by Assistant Attorney General Ann W. Matthews, for the State.
Kevin P. Bradley for defendant-appellant.
MARTIN, Chief Judge.
Kimberly Ann Edwards (defendant) appeals from a judgment entered 24 January 2005 following her conviction for felony child abuse. For the reasons stated below, we find no error.
On 21 June 2004, the Cumberland County grand jury indicted defendant on a charge of felony child abuse. At trial, the State introduced evidence tending to show the following: On 29 December 2003, defendant brought her sixteen-month-old daughter to her pediatrician's office. She reported that her daughter had "[l]eg pains for three days and hardly not walking for last two-and-a-half weeks[,]" but she gave no history of trauma such as a fall or anything that could have caused the child to have leg pains. The pediatrician sent the child to the emergency room, and x-rays revealed fractures of her tibia in both legs, a fracture of the fibula in one leg, three fractured ribs, and a skull fracture.
A forensic pediatrician determined the child's fractures had occurred on varying dates, with some of the fractures having occurred between two and six weeks earlier and others having occurred within the preceding ten days. Based upon the location and type of injuries, the forensic pediatrician opined that the child's injuries were intentionally inflicted and not accidental. The forensic pediatrician further testified that the child's demeanor at the hospital was consistent with children who are chronically battered, and defendant's demeanor toward her child was consistent with situations where a child's injuries were inflicted rather than accidental.
Sergeant Lynette Hodges testified defendant asserted she had been the child's sole caregiver after leaving the home of the child's paternal grandmother in October. Sharon Miller, who was a social worker with the Department of Social Services at the time, also testified that defendant was adamant that the child had been in no one else's care during the relevant time frame.
Ms. Miller informed defendant that her daughter and her toddler-aged son would be placed in foster care, or they could be placed with a family member or friend if she signed a protection plan. Ms. Miller stated defendant was very adamant that she did not want her children placed with her mother and that she would rather have her children placed in foster care. Ms. Miller testified that after coming into contact with the maternal grandmother at a later time, she learned that defendant's negative comments about the grandmother were not true. The grandmother informed Ms. Miller that defendant's stepfather was not deceased as defendant had claimed. Ms. Miller also testified Angela Vaughn, a friend with whom defendant was staying, had prompted defendant to seek medical attention for the child.
Detective Michael J. Hohan testified he was present when Dr. Kimmie Lee Cass began discussing the child's injuries with defendant. He described defendant as being very cold, very removed, and as having no reaction whatsoever to the news of the injuries. He was also present when Ms. Miller asked if defendant was aware of the child's injuries. Defendant indicated to Ms. Miller that she was aware of the injuries, but she did not seek any kind of medical treatment because she did not want to be arrested for child abuse. When Ms. Miller inquired about placing defendant's children with relatives or in foster care, Detective Hohan heard defendant tell Ms. Miller and Sergeant Lynette Hodges that her father was dead and her mother "was a street-walking prostitute and addicted to crack cocaine and [they] could find her turning tricks on 301." Detective Hohan later learned that defendant's mother had retired from the U.S. Army and was working with the U.S. Postal Service at that time and that defendant's stepfather was still active in the U.S. Army.
During Detective Hohan's interview with defendant following her arrest on 29 December 2003, defendant referred to "a really bigdude" who may have inflicted the injuries on the child. Defendant later said "if I tell you who did it you have to go get them. . . . And how else are they gonna know who told, they know it's gonna be me." She related that "this big mean dude ain't just no, ain't type of person to mess around with." After defendant described the individual as being married and having four children, Detective Hohan asked if he was the husband (Chaa Connant) of Ms. Vaughn, with whom defendant had been staying with her children. He then commented that "You're shaking your head yes" and asked defendant to say his name, but defendant stated she could not.
Detective Hohan testified defendant alluded to this "big dude" as being a drug dealer. Based upon other comments by defendant about the individual, Detective Hohan investigated both Ms. Vaughn and Mr. Connant with whom defendant had been staying during the relevant time period. Detective Hohan stated that Ms. Vaughn was a student and that Mr. Connant was a truck driver. His investigation revealed that neither Ms. Vaughn nor Mr. Connant had a criminal record, and his inquiries in California of any criminal or gang activity by Mr. Connant were negative. His inquiries through the narcotics division and the east coast intelligence system returned nothing about Mr. Connant. Detective Hohan testified that Ms. Vaughn informed him that her husband had been on the road and subsequently in Ohio at a relative's residence during the relevant time period.
Detective Hohan's investigation of Damian Daughtry, who was staying at a trailer which had been defendant's residence, revealed no criminal record and no negative contacts with law enforcement agencies. Upon learning the full name of the child's father, Jimmy Plymouth, Detective Hohan discovered Mr. Plymouth had an outstanding arrest warrant. Detective Hohan took Mr. Plymouth into custody and attempted to talk with him, but was unsuccessful.
Defendant made a motion to dismiss the charge at the close of the State's evidence, which the trial court denied. She then testified on her own behalf. Although defendant acknowledged her earlier statements to various individuals that she had been the child's sole caregiver, she subsequently testified that she had left the child in the care of Ms. Vaughn and Mr. Connant when she went shopping or ran errands during the relevant time period. Defendant said she did not tell Detective Hohan that she suspected Mr. Connant inflicted the injuries because the detective could not give her a definite answer about protective custody for herself and her children. Defendant stated she still did not know if Mr. Connant inflicted the injuries, but she asserted that she did not cause the injuries.
Defendant denied making the derogatory comments about her mother, and she denied saying that her father was dead. She instead said she told Ms. Miller that she did not want her children with her mother because they were on bad terms. Defendant testified again on redirect examination that she did not know who inflicted the injuries on her child, but she did not do it. She renewed her earlier motion to dismiss at the close of all the evidence, and the trial court again denied the motion. During closing arguments, the State referred to defendant's derogatory statements about her mother and defendant's expressed desire that the children be placed in foster care. The State reminded the jury that defendant had consistently claimed to be the sole caregiver during the time of the injuries until after her arrest, at which time defendant suggested a "big dude" might have caused the injuries. In addition, the State briefly summarized the detective's investigation of various individuals and the lack of corroboration for defendant's statements about them. After the jury found defendant guilty of felony child abuse, the trial court sentenced her to a term of twenty-four to thirty-eight months imprisonment. From the trial court's judgment, defendant appeals.
Defendant contends she received ineffective assistance of trial counsel. She asserts that because her trial counsel's neglect and the resulting prejudice are apparent from the appellate record, she must raise her ineffective assistance of counsel claim in this appeal. She argues her trial counsel's failure to object to various hearsay statements allowed the State "to make powerful arguments both against [her] credibility and character in general . . . ." Defendant's arguments are not persuasive.
Ineffective assistance of counsel "claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . ." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). A defendant who alleges "ineffective assistance of counsel must show that (i) counsel's performance fell below an objective standard of reasonableness and (ii) counsel's errors were so serious that they deprived the defendant of a fair trial." State v. Jones, 97 N.C. App. 189, 202, 388 S.E.2d 213, 220 (1990). "The question becomes whether a reasonable probability exists that, absent counsel's deficient performance, the result of the proceeding would have been different." State v. Moorman, 320 N.C. 387, 399, 358 S.E.2d 502, 510 (1987).
Defendant argues that her trial counsel was ineffective for failing to object to three statements made by Detective Hohan during direct examination. In those statements, Detective Hohan testified that: (1) defendant's stepfather was active in the U.S. Army and her mother was retired from the U.S. Army and was currently working for the U.S. Postal Service; (2) Ms. Vaughn was a student and Mr. Connant was a truck driver; and (3) Ms. Vaughn informed him that Mr. Connant was on the road and in Ohio during the relevant time period. Defendant is correct that each of these three statements was hearsay, which "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005).
While hearsay is not properly admissible, its admission does not always require a new trial. See State v. Hickey, 317 N.C. 457, 473, 346 S.E.2d 646, 657 (1986). A defendant must also show there is a reasonable possibility that a different result would have been reached at trial had the testimony not been admitted. Id.; see also N.C. Gen. Stat. § 15A-1443(a) (2005). Defendant here has not met that burden. In light of the substantial inconsistencies in defendant's statements to medical personnel and law enforcement on 29 December 2003 and in her testimony in open court as to who was caring for her child and how the injuries occurred, Detective Hohan's statements about the occupations of Mr. Connant, Ms. Vaughn, defendant's mother and her stepfather were tangential to the matter before the trial court. Given defendant's equivocation as to the identity of the "big dude" who may have inflicted the child's injuries and her refusal to name Mr. Connant as a suspect , Detective Hohan's statement that he had learned from Mr. Connant's wife that he was on the road and in Ohio during the relevant time period did not allow the prosecutor to eliminate Mr. Connant as a suspect as defendant claims.
In view of the substantial evidence presented at trial of t he severity of the child's injuries, of the differing time periods in which those injuries occurred, of defendant's demeanor as observed by medical personnel, and of defendant's inability to offer any explanation as to the cause of the child's non-accidental injuries, the failure of defendant's trial counsel to object to the hearsay statements was not prejudicial. Defendant has not carried her burden of establishing a reasonable possibility that she would not have been convicted of felony child abuse had the hearsay statements not been admitted. This assignment of error is overruled.
Defendant has failed to set out her remaining assignment of error in her brief. Because she has neither cited any authority nor stated any reason or argument in support of her second assignment of error, it is deemed abandoned. N.C.R. App. P. 28(b)(6) (2006).
No error.
Judges BRYANT and GEER concur.
Report per Rule 30(e).