STATE OF NORTH CAROLINA v. MELVIN EARL HAGANS

No. COA05-1090

(Filed 4 April 2006)

**1. Firearms and Other Weapons— possession by felon—prior conviction for misdemeanor breaking and entering**

A motion for appropriate relief filed with the Court of Appeals was granted and an indictment for possession of a firearm by a felon was dismissed where the underlying conviction was for misdemeanor rather than felonious breaking and entering.

**2. Evidence— prior crime or bad act—robbery—plan or scheme—probative value outweighing prejudice**

Evidence of a prior robbery in which defendant participated was properly admitted in a prosecution for assault with a deadly weapon and other firearms charges arising from a robbery where the similarities between the robberies indicated a plan, scheme, system, or design. Furthermore, the similarities between the robberies, which occurred within a week of each other, were sufficient to support a finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

**3. Criminal Law— deadlocked jury—supplemental instructions**

The trial court did not abuse its discretion by denying a mistrial where a jury deadlocked on one of seven charges and the court instructed the jurors to consider each of the seven charges separately. The court's supplemental instruction did not threaten to require unreasonably long deliberations and was not a dynamite charge.

**4. Evidence— hearsay—explanation of subsequent conduct—not plain error**

The trial court did not commit plain error by admitting uncorroborated hearsay statements from defendant's codefendants where the statements were admissible for the nonhearsay purpose of explaining subsequent conduct, were admissible as statements of a coconspirator in furtherance of the conspiracy, or did not rise to the level of prejudicial error.

**5. Firearms and Other Weapons— firing at occupied vehicle— sufficiency of evidence**

There was sufficient evidence that shots were fired at an occupied vehicle and liability for firing the shots and possessing the firearm are imputed to the defendant because the State proceeded under acting in concert. There was sufficient evidence of assault with a deadly weapon and related charges to go to the jury.

**6. Sentencing— presumptive range—no comment on mitigating factors—no *Blakely* issue**

The trial court did not abuse its discretion by sentencing defendant within the presumptive range for convictions for assault with a deadly weapon and firing a firearm into an occupied vehicle. The fact that the court imposed presumptive sentences without comment does not mean that mitigating factors were not considered, and *Blakely* does not apply because aggravating factors were neither presented nor found.

Appeal by defendant from judgments entered 17 December 2004 by Judge Cy A. Grant in Pitt County Superior Court. Heard in the Court of Appeals 15 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Bruce T. Cunningham, Jr., for defendant-appellant.*

TYSON, Judge.

Melvin Earl Hagans ("defendant") appeals from judgments entered after a jury found him to be guilty of: (1) possession of a firearm by a felon; (2) assault with a deadly weapon; (3) discharge of a firearm into an occupied vehicle; and (4) three counts of attempted discharge of a firearm into an occupied vehicle. We find no error in part, vacate in part, and remand for resentencing.

I. Background

A. State's Evidence

William Parker ("Parker") was assaulted and robbed at gunpoint upon arriving home on the evening of 20 June 2004. His assailants were two black males dressed in dark clothing and toboggan masks with the areas over the eyes cut out. One of the masks bore an NFL

STATE v. HAGANS

[177 N.C. App. 17 (2006)]

team logo. One robber held a gun to Parker, demanded his briefcase, which Parker did not have, took his wallet, and removed items from the rear of his vehicle. The other robber removed items from the passenger side of Parker's vehicle.

One gunman forced Parker to lay face down in the grass, placed the gun to the back of Parker's head, and threatened his accomplice would kill Parker if he moved. The two robbers ran away. Although Parker lost sight of the men, he heard them running and heard their voices. Parker stood and observed the men enter a Cadillac and drive away.

Parker entered his vehicle, chased after the two men, and called 911. Parker soon caught up to the Cadillac. He observed a muzzle flash from inside the Cadillac and heard· a gunshot. The Cadillac made a right turn. Parker followed and attempted to obtain the license plate number for the 911 dispatcher. The chase continued for several minutes during which an arm and pistol emerged from the rear passenger window four times. Seven shots were fired toward Parker's car.

The Cadillac eventually eluded Parker, but was stopped by Greenville Police Officer Robert Brewington ("Officer Brewington") shortly thereafter. After arriving home and inspecting his vehicle, Parker observed a small hole below the front grill of his vehicle, which appeared to be a bullet hole.

Upon stopping the Cadillac, Officer Brewington observed a black male wearing dark clothing exit the passenger side rear door and flee. Officer Brewington testified ·defendant, the driver of the vehicle, asked him what was going on and stated he had been stopped by two black males and ordered to drive. A stocking hat with a hole cut out was discovered in the right front passenger floor board of the Cadillac.

James Ham ("Ham") testified for the State. Ham was apprehended the following morning around 6:00 a.m. with a bandaged right hand. Ham testified he had known defendant for four to five years and previously shared a mobile home with him. About two weeks prior to the Parker robbery, Ham and defendant met with Lionel Grandy ("Grandy"). The three associated during the two weeks prior to the robbery. During that time, Ham and Grandy purchased a .38 revolver pistol.

STATE v. HAGANS

[177 N.C. App. 17 (2006)]

On 20 June 2004, Ham borrowed his aunt's Cadillac. Defendant and Grandy went with Ham to visit Ham's parents' and grandparents' home in Aurora. After leaving the house, Grandy indicated he might have a "lick" for them or a "get-on move" to get some money. Grandy claimed he previously worked with Parker, who would carry a briefcase containing money to his home. The men drove by Parker's Barbecue in Greenville, where Grandy identified Parker's vehicle.

Grandy then drove to Parker's neighborhood and dropped off Ham and defendant. Ham wore a Carolina Panthers toboggan hat with eye holes cut out and carried the .38 revolver. When Parker arrived, Ham and defendant approached Parker's vehicle. Ham pointed his gun at Parker and demanded his briefcase. Ham took Parker's wallet and a gray plastic container from the back of the vehicle. Defendant went through Parker's vehicle and removed two black bags. Defendant and Ham returned to the Cadillac. Shortly after Grandy drove away, he stopped the vehicle and asked defendant to drive because defendant was the only one of the three men with a driver's license. Grandy was worried Parker would call the police. Grandy exited the vehicle and sat in the rear driver's side seat. Defendant moved over into the driver's seat.

When Parker's vehicle approached the Cadillac, Grandy and Ham grabbed the gun. The gun fired, shooting Ham in the right hand. Ham placed his hand outside the window and later bent over in the backseat, holding his hand. Grandy leaned over Ham and fired the gun out the rear passenger window toward Parker's vehicle. After eluding Parker, defendant stopped the car. Grandy fled carrying the gun. The Cadillac proceeded down the road and was stopped at an intersection by Officer Brewington. Ham jumped from the vehicle and fled. Ham was arrested and transported to the hospital the following morning. After discharge from the hospital, Ham was taken to the Greenville Police Department, where he voluntarily gave a statement.

Over defendant's objection, Ham testified to a prior robbery on 13 June 2004 involving defendant and Grandy pursuant to Rule 404(b). Ham testified he drove his aunt's Cadillac to a Pizza Hut in Zebulon around 2:00 a.m. on 13 June 2004. Defendant and Grandy exited the vehicle to rob the Pizza Hut. Ham waited in the front passenger's seat. Grandy carried the same .38 revolver that was later used in the Parker robbery. The men returned to the car carrying a clear plastic bag containing money. The men divided the money and Ham received $99.00. Defendant drove the Cadillac from the scene.

### B. Defendant's Evidence

Defendant testified that on 20 June 2004 he drove the Cadillac to Aurora with Ham and Grandy as passengers. As they were leaving Aurora, Grandy received a call, cursed, and said he "was coming to get [his] things girl." Ham drove the men to a residence defendant believed to be Grandy's girlfriend's house. Defendant waited in the car until Ham and Grandy returned with two bags and a gray container. Grandy drove off with Parker chasing them. Ham replied, "I got him" and reached onto the floor. Ham shot himself in the hand as he came back up.

Defendant testified he thought the man pursuing them was Grandy's girlfriend's boyfriend and he never knew it was Parker behind them. He testified that Ham continued to shoot out the right rear passenger window with his left hand as they continued to flee from the vehicle pursuing them. After the men evaded Parker, Grandy drove the car into a cul-de-sac, exited the vehicle, and fled. Defendant slid over into the driver's seat and attempted to drive Ham to the hospital. After being stopped at the intersection, Ham told defendant that he and Grandy had robbed a man. Ham exited the vehicle and fled. Defendant denied having any knowledge about the robbery of the Pizza Hut in Zebulon on 13 June 2004.

Defendant was convicted of: (1) possession of a firearm by a felon; (2) assault with a deadly weapon; (3) discharge of a firearm into an occupied vehicle; and (4) three counts of attempted discharge of a firearm into an occupied vehicle. The jury failed to reach a unanimous decision on the armed robbery charge and the court declared a mistrial for that offense.

At the sentencing hearing, defendant offered the following mitigating factors: (1) assistance in the apprehension of another felon; (2) acknowledgment of wrongdoing; (3) being a person of good character and reputation in the community; (4) honorable discharge from the United States Army; (5) support of his family; (6) a support system in the community; and (7) positive employment history. The State offered no evidence or proffer in response. Defendant was sentenced to consecutive prison terms all within the presumptive ranges of: (1) forty-six to sixty-five months for discharging a weapon into an occupied vehicle; (2) sixteen to twenty months for the consolidated charges of possession of a firearm by a felon and assault with a deadly weapon; and (3) forty-six to sixty-five months for three consolidated counts of attempted discharge of a weapon into an occupied vehicle. Defendant appeals.

## II.  Issues

Defendant contends the trial court erred by: (1) allowing the admission of uncorroborated evidence of a different, earlier armed robbery under Rule 404(b); (2) accepting jury verdicts in six of seven charges and declaring a mistrial in the remaining count when all counts were joined and consolidated for trial; (3) admitting uncorroborated hearsay statements by a third co-defendant who was not on trial or available to testify and subject to cross-examination by the defense; (4) admitting Ham's written statement containing uncorroborated hearsay statements by a third co-defendant; (5) denying his motion to dismiss at the close of the State's evidence and renewed motion to dismiss at the close of all evidence for insufficiency of the evidence; and (6) failing to make findings of fact in support of its sentences and judgments where he presented uncontradicted evidence in support of several statutory mitigating factors and failing to consider those mitigating factors prior to sentencing him and entering judgment.

## III.  Motion for Appropriate Relief

**[1]** Defendant filed a motion for appropriate relief with this Court on 28 February 2006 seeking to vacate his possession of a firearm by a felon conviction. He argues the prior conviction upon which the possession of a firearm conviction rests is a misdemeanor rather than a felony. N.C. Gen. Stat. § 15A-1411 (2005) provides, "Relief from errors committed in the trial division, or other post-trial relief, may be sought by a motion for appropriate relief."

A prior felony conviction for breaking and entering is listed on defendant's indictment for possession of a firearm by a felon. The indictment alleges the breaking and entering offense is a Class H felony. Defendant was convicted of this offense on 30 November 1992 in Wake County and was sentenced to two years imprisonment, suspended upon probation.

Defendant filed the transcript of plea and judgment from the breaking and entering offense listed in the indictment with this Court. These documents reveal defendant pled guilty to and was convicted of misdemeanor, rather than felony, breaking and entering on 30 November 1992. The indictment for the offense of possession of a firearm by a felon offense is fatally defective and dismissed. No other felony to support the possession of a firearm by a convicted felon was alleged. Defendant's motion for appropriate relief is

granted. Defendant's conviction for possession of a firearm by a felon is vacated.

## IV. Rule 404(b)

**[2]** Defendant asserts evidence of the prior Pizza Hut robbery on 13 June 2004 should have been excluded and argues: (1) this evidence was not corroborated; (2) this evidence did not concern a prior offense for which he had been convicted; and (3) the crime remained under investigation at the time of his trial.

### A. Standard of Review

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion." *State v. Boston*, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004) (citing *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990)). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citing *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985)).

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Our Supreme Court recently stated:

This rule is a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. The list of permissible purposes for admission of other crimes evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime.

*State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (internal quotation and citation omitted), *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). Upon a finding that evidence is admissible under Rule

404(b), the evidence may still be excluded if the trial court finds its probative value is substantially outweighed by the danger of undue prejudice to the defendant. N.C. Gen. Stat. § 8C-1, Rule 403 (2005).

In *State v. Davis*, the defendant was convicted of armed robbery of a pawnshop. 340 N.C. 1, 14, 455 S.E.2d 627, 633-34, *cert. denied,* 516 U.S. 846, 133 L. Ed. 2d 83 (1995). Our Supreme Court upheld the admission of evidence that the same perpetrators had robbed a restaurant one week earlier under Rule 404(b). *Id.* This evidence of a prior robbery was sufficiently similar to the crime charged to show the disputed element of intent. *Id.* at 14, 455 S.E.2d at 633.

In *State v. Suggs*, this Court upheld admission of evidence of a prior robbery by the defendant even though he had been charged but not convicted of the crime. 86 N.C. App. 588, 592, 359 S.E.2d 24, 27, *cert. denied,* 321 N.C. 299, 362 S.E.2d 786 (1987). We noted "[s]ince the scope of Rule 404(b) includes 'wrongs or acts,' the Rule does not on its face require such extrinsic acts result in criminal liability . . . we conclude conviction of other crimes is not a prerequisite to their admissibility under Rule 404(b)." *Id.* at 591-92, 359 S.E.2d at 26-27.

Here, as in *Davis*, evidence was admitted that defendant participated in an armed robbery a week prior to participating in the armed robbery at bar. 340 N.C. at 14, 455 S.E.2d at 633. The evidence tended to show: (1) the same three men participated in the earlier robbery; (2) the men wore dark clothing and covered their faces; (3) the same .38 revolver was used; (4) the same Cadillac was used; and (5) one man stayed behind in the car while the other two men robbed the store. Evidence of defendant's involvement in the Zebulon Pizza Hut robbery is sufficiently similar to be admitted for the purpose of showing defendant had a "plan, scheme, system or design" involving robbery. *Id.* Since "conviction of other crimes is not a prerequisite to their admissibility under Rule 404(b)," defendant not being charged with or convicted of the prior robbery is irrelevant to whether the Rule 404(b) evidence was properly admitted. *Suggs,* 86 N.C. App. at 592, 359 S.E.2d at 27.

### B. Rule 403—Unfair Prejudice

Defendant also contends the trial court abused its discretion by failing to exclude the evidence. He argues the probative value of this evidence was substantially outweighed by the unfair prejudice of having to defend against uncharged conduct in the middle of a jury trial. " 'The ultimate test for determining whether such evidence is admis-

sible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403.'" *Davis*, 340 N.C. at 14-15, 455 S.E.2d at 634 (quoting *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)). The similarities between the robbery of the Pizza Hut and that of Parker, together with the one week time period between the two robberies, are sufficient to support a finding that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Defendant failed to show this evidence only shows "propensity or disposition" to commit the crimes or that the trial court abused its discretion in admitting the evidence of the prior robbery under Rule 404(b). These assignments of error are overruled.

### V. Failure to Grant a Mistrial

[3] Defendant contends the trial court abused its discretion by accepting verdicts in six of seven charges joined and consolidated for trial particularly due to the trial court's additional charge to the jury to consider each charge separately after the jury deadlocked.

The standard of review for denial of a mistrial is whether the trial court abused its discretion. *State v. Upchurch*, 332 N.C. 439, 453, 421 S.E.2d 577, 585 (1992) (quotation omitted). As noted above, defendant must show the trial court's ruling "was so arbitrary that it could not have been the result of a reasoned decision" to warrant a new trial. *Id.*

N.C. Gen. Stat. § 15A-1063(2) (2005) provides, "Upon motion of a party or upon his own motion, a judge may declare a mistrial if: . . . (2) It appears there is no reasonable probability of the jury's agreement upon a verdict." N.C. Gen. Stat. § 15A-1235(c) (2005) states that if, during the course of jury deliberations:

> it appears to the trial judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may also give or repeat the instructions which are provided in subsections (a) and (b). [However,] [t]he judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

In addition, "[i]f it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury." N.C. Gen. Stat. § 15A-1235(d) (2005).

Defendant contends the trial court abused its discretion by giving a supplemental instruction after the jury deadlocked on one of the charges. Defendant argues the court forced a verdict and cites *State v. Alston*, 294 N.C. 577, 243 S.E.2d 354 (1978). *Alston* reviewed a charge given to the jury, before deliberation, which included:

> (1) the court's mention of the inconvenience and expense of empaneling another jury to try the case[;] (2) the court's statement that an agreement would ease the tension within the jury but that disagreement would be the first step towards deadlock[;] (3) the court's admonition that the jury should not put up with any juror who wanted to discuss one point endlessly[;] and (4) an intimation by the court that any juror who found himself in the minority should question the correctness of his decision.

294 N.C. at 592, 243 S.E.2d 364. The situation here does not involve such a "dynamite charge." A supplemental instruction was provided after the jury informed the court they were deadlocked on one count. *Id.* at 593, 243 S.E.2d at 365.

After the jury had deliberated for approximately one full day without reaching a verdict, the trial court gave the following instruction:

> Members of the jury, as you know the defendant has been charged with seven separate crimes, and these seven charges have been consolidated into one trial for the convenience of parties and witnesses, but as jurors, you are to give separate and independent consideration to each charge as though each charge was being tried separately. Now members of the jury, I want you to return to the jury room to resume your deliberations with a view toward reaching a verdict. Thank you.

The trial judge did not threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. N.C. Gen. Stat. § 15A-1235(c). Defendant has cited no authority that a jury instruction to consider each charge separately was error. Defendant has failed to show the trial court abused its discretion by providing a supplemental instruction and allowing the jury to deliberate further after one day. This assignment of error is overruled.

## VI. Uncorroborated Hearsay Statements by Co-Defendant

[4] In consolidated assignments of error, defendant contends the trial court committed plain error by admitting uncorroborated hearsay statements of defendant's co-defendants. Defendant argues

the trial result would have been different had Ham not been permitted to testify to Grandy's statements. Grandy was not called as a witness and was not shown to be unavailable. Defendant also argues Ham should not have been allowed to read to the jury the written statement he had given to the police.

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion." *Boston*, 165 N.C. App. at 218, 598 S.E.2d at 166 (citing *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990)). Defendant failed to object to the testimony at trial and asserts plain error. To award a new trial for plain error, a defendant must show a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . ." *State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983) (citations omitted).

Out of court statements are admissible to explain the subsequent conduct of the person to whom the statement was made. *State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990) (citing *State v. White*, 298 N.C. 430, 437, 259 S.E.2d 281, 286 (1979)); *State v. Earhart*, 134 N.C. App. 130, 136, 516 S.E.2d 883, 887 (1999) (citations omitted). Statements made during the course of and in furtherance of the conspiracy are also admissible as an exception to the hearsay rule. *State v. Williams*, 345 N.C. 137, 141, 478 S.E.2d 782, 784 (1996) (citing N.C. Gen. Stat. § 8C-1, Rule 801(d)(E) (2005)). The State must prove a conspiracy independent of the declarations sought to be admitted in order to admit hearsay statements of a co-conspirator. *State v. Nichols*, 321 N.C. 616, 630, 365 S.E.2d 561, 570 (1988). Admission of hearsay testimony is not always prejudicial. The defendant carries the burden to show a reasonable possibility of a different result would have occurred at trial without the hearsay evidence. *State v. Hickey*, 317 N.C. 457, 473, 346 S.E.2d 646, 657 (1986).

Defendant argues Ham should not have been allowed to testify to Grandy's statements that Grandy: (1) had a "lick" for Ham and defendant; (2) knew Parker carried a suitcase full of money; (3) went to see if Parker's vehicle was parked at the restaurant; (4) could not rob Parker without being recognized; (5) demanded to know whether Ham and defendant knocked Parker out and kept saying Parker was following them; (6) had the idea to ditch the Cadillac; and (7) declared he had robbed the Pizza Hut on 13 June 2004.

The statements Grandy made about a "lick" and about Parker having a briefcase were admissible for the non-hearsay purpose of

explaining the subsequent conduct of Ham and defendant. *See State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002) ("[O]ut-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay . . . statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed." (citations omitted)). The rest of the statements, with the exception of the statement regarding the Pizza Hut robbery, were admissible as statements of a co-conspirator in the course of and in furtherance of the conspiracy. *See Coffey*, 326 N.C. at 282, 389 S.E.2d at 56; N.C. Gen. Stat. § 8C-1, Rule 801(d)(E).

Ham's testimony that Grandy declared he had robbed the Pizza Hut on 13 June 2004 was not made during the course of and in furtherance of the conspiracy to rob Parker and does not explain the subsequent conduct of Ham and defendant. Admission of this statement does not rise to the level of plain or prejudicial error defendant must demonstrate after his failure to object or to warrant a new trial. Defendant failed to show a reasonable possibility of a different result at trial without admission of this hearsay evidence to warrant a new trial. *Hickey*, 317 N.C. at 473, 346 S.E.2d at 657. Other overwhelming evidence of defendant's guilt was admitted to sustain the verdicts and judgments. This assignment of error is overruled.

## VII. Sufficiency of the Evidence

**[5]** Defendant contends the State presented insufficient evidence to support his convictions and the trial court erred by denying his motion to dismiss at the close of the State's evidence and renewed motion to dismiss at the close of all the evidence.

## A. Standard of Review

When ruling on a motion to dismiss, the trial court must decide "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citing *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). Evidence is viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 378-79, 526 S.E.2d 455 (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both." *Id.* at 379,

526 S.E.2d at 455 (citing *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1989)).

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Id.* (citation and internal quotations omitted).

Defendant cites no authority to support his argument the State failed to present sufficient evidence to sustain a conviction. Defendant argues the evidence fails to show he fired the gun or that the gun was fired toward Parker's vehicle. Defendant also argues no evidence shows he actually or constructively possessed the firearm. We disagree.

### B. Acting in Concert

The trial court instructed the jury on acting in concert as follows:

> If two or more persons join in a common purpose to commit a crime, each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime but is also guilty of any other crime committed by the other in pursuance of the common purpose to commit the original crime or as a natural and probable consequence thereof.

In *State v. Mann*, our Supreme Court stated:

> If two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.

355. N.C. 294, 306, 560 S.E.2d 776, 784 (citations and quotations omitted), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). If a person is close enough to be able to render assistance if needed and to

encourage the actual perpetration of the crime, then that person is constructively present during the commission of the crime. *Id.*

Here, the evidence tended to show defendant accompanied Ham to Parker's house where they robbed Parker at gunpoint. Further, defendant was present in the car during the pursuit while shots were fired at Parker's vehicle and throughout the conspiracy. Evidence presented supports a jury finding defendant acted in concert with Ham and Grandy in robbing Parker and in discharging and attempting to discharge a firearm into Parker's vehicle.

### C.  Discharge of a Firearm Into an Occupied Vehicle

Testimony from Parker, Ham, and defendant presented uncontradicted evidence that shots were fired from the robbers' vehicle at Parker's vehicle. Parker testified he saw the gun and heard shots fired toward him. Ham testified he grabbed for the gun to prevent Grandy from shooting Parker. Defendant testified several shots were fired from the Cadillac and he believed Ham was firing at Parker's vehicle. Parker found what appeared to be a bullet hole in the front of his vehicle and testified the hole was not there the day before. Viewed in the light most favorable to the State, this evidence is sufficient for the jury to conclude that shots were fired by the robbers at Parker's vehicle. This assignment of error is overruled.

### VIII.  Presumptive Sentencing

[6] Defendant contends the trial court erred by failing to make findings of fact to support its judgments. He argues uncontradicted evidence supports several statutory mitigating factors, and the trial court failed to consider those mitigating factors prior to entering judgment. We disagree.

Defendant filed a petition for writ of *certiorari* seeking review of this issue with this Court on 28 February 2006. *See* N.C. Gen. Stat. § 15A-1441(a1) (2005) ("A defendant who has been found guilty . . . [of] a felony, is entitled to appeal as a matter of right the issue of whether his or her sentence is supported by evidence introduced at the trial and sentencing hearing only if the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.")

The standard of review for application of mitigating factors is an abuse of discretion. *State v. Butler*, 341 N.C. 686, 694-95, 462 S.E.2d 485, 489-90 (1995). "The court shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence as appropriate, but the decision to depart from the presumptive range is in the discretion of the court." N.C. Gen. Stat. § 15A-1340.16(a) (2005). "The court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences specified in G.S. 15A-1340.17(c)(2)." N.C. Gen. Stat. § 15A-1340.16(c) (2005).

Here, the trial court sentenced defendant within the presumptive range for each of his convictions. The fact the trial court, without comment, imposed consecutive presumptive sentences does not mean the trial court failed to consider the mitigating factors presented.

Defendant's notion that the court is obligated to formally find or act on proposed mitigating factors when a presumptive sentence is entered has been repeatedly rejected. *See State v. Allah*, 168 N.C. App. 190, 197, 607 S.E.2d 311, 316 (2005) (" 'Since the court may, in its discretion, sentence defendant within the presumptive range without making findings regarding proposed mitigating factors,' this Court has found no error in the failure to make such findings." (quoting *State v. Ramirez*, 156 N.C. App. 249, 258-59, 576 S.E.2d 714, 721 (2003)); *State v. Streeter*, 146 N.C. App. 594, 597-98, 553 S.E.2d 240, 242 (2001), *cert. denied*, 356 N.C. 312, 571 S.E.2d 211 (2002), *cert. denied*, 537 U.S. 1217, 154 L. Ed. 2d 1071 (2003); *State v. Chavis*, 141 N.C. App. 553, 568, 540 S.E.2d 404, 415 (2000) ("This Court has held the trial court is required to take 'into account factors in aggravation and mitigation *only* when deviating from the presumptive range in sentencing.' " (quoting *State v. Caldwell*, 125 N.C. App. 161, 162, 479 S.E.2d 282, 283 (1997)). The trial court did not abuse its discretion by failing to make formal findings or act on the proposed mitigating factors when sentences were imposed within the presumptive range for each conviction.

Defendant also contends the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004) effectively nullifies the holding in *Streeter. Blakely* dealt only with the question of whether a trial court may *enhance* a defendant's sentence *above the presumptive range* by unilaterally imposing

aggravating factors. 542 U.S. at 301, 159 L. Ed. 2d at 412 (" 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435 (2000)). Because the State in this case did not present or argue for and the trial court did not find any aggravating factors, *Blakely* does not apply to the facts of this case. These assignments of error are overruled and defendant's petition is denied.

## IX. Conclusion

Defendant's indictment for possession of a firearm by a felon is fatally defective because it alleges he was convicted of felony breaking and entering when he was in fact convicted of misdemeanor breaking and entering. Defendant's possession of a firearm by a felon conviction is vacated, and this case is remanded for resentencing consistent with this opinion.

In all other respects, defendant received a fair trial free from prejudicial errors he assigned and argued. The trial court did not abuse its discretion in admitting the evidence of the prior robbery under Rule 404(b). *Davis*, 340 N.C. at 14-15, 455 S.E.2d at 633-34. Similarities between the robberies of the Pizza Hut and Parker that occurred within one week of each other are sufficient evidence to support a finding that the probative value of the evidence of the Pizza Hut robbery was not substantially outweighed by the danger of unfair prejudice.

The trial court did not abuse its discretion by providing a supplemental instruction to the jury which did not threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. N.C. Gen. Stat. § 15A-1235(c).

Ham's testimony of Grandy's statements was introduced for the non-hearsay purpose of explaining the subsequent conduct of Ham and defendant and as statements of a co-conspirator in the course of and in furtherance of the conspiracy. The trial court did not abuse its discretion in admitting the testimony. Presuming Grandy's hearsay statement claiming responsibility for the Pizza Hut robbery was improperly admitted, in the absence of an objection by defendant or showing a different result would have occurred at trial, the admission of the statement does not warrant a new trial under plain or prejudicial error review.

Viewed in the light most favorable to the State, the evidence was sufficient for the jury to reasonably conclude shots were fired at Parker's vehicle. Because the State proceeded under an acting in concert theory, liability for firing the shots and possession of the firearm are imputed to defendant, who was present in the vehicle and acted in concert with his co-conspirators.

The trial court did not commit an abuse of discretion by failing to sentence defendant in the mitigated range. All sentences were imposed within the presumptive ranges for each conviction. Defendant's petition for writ of *certiorari* is denied.

No Error in Part, Vacated in Part, and Remanded for Resentencing.

Judges McCULLOUGH and LEVINSON concur.