STATE OF NORTH CAROLINA v. JOHN PAUL MADURES

No. COA08-602

(Filed 7 July 2009)

**1. Confessions and Incriminating Statements— intent—absence of mistake or accident—redacted statements**

The trial court did not abuse its discretion in an assault with a firearm upon a law enforcement officer and resisting a public officer case by admitting under N.C.G.S. § 8C-1, Rule 404(b) evidence of statements relating to defendant's prior arrest and statements made by defendant while he was being transported from his home to jail on the present charges because: (1) the evidence was properly admitted to provide a complete picture for the

STATE v. MADURES

[197 N.C. App. 682 (2009)]

jury; (2) there was no violation of Rule 8C-1, Rule 403; (3) the evidence has a tendency to make defendant's prior assaults upon and resistance to the officers more probable, and defendant's statements tend to show both his intent and absence of mistake or accident in the commission of the offenses charged against him; and (4) the trial court allowed a recording of the latter statements to be played for the jury, but required the jury to exit the courtroom to prevent the jury from hearing portions of the recording which the court previously had determined to be unfairly prejudicial or irrelevant.

**2. Appeal and Error— preservation of issues—failure to make motion to recuse**

Although defendant contends the trial judge erred by failing to recuse himself *ex mero motu* after realizing that he previously had met defendant's family during negotiations between the family and a gas company for an easement on the family's real property, this argument is dismissed because defendant made no motion to recuse.

Appeal by defendant from judgment entered 2 October 2007 by Judge John L. Holshouser, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 14 January 2009.

*Attorney General Roy A. Cooper, III, by Special Attorney General Karen E. Long, for the State.*

*Gilda C. Rodriguez, for defendant-appellant.*

JACKSON, Judge.

John Paul Madures ("defendant") appeals from judgment and commitment orders entered 2 October 2007 convicting him of two counts of assault with a firearm on a law enforcement officer and two counts of resisting a public officer in the performance of his duties. Defendant was sentenced to two consecutive sentences of twenty-nine months minimum and forty-four months maximum imprisonment. For the reasons stated below, we hold no error in part and dismiss in part.

In October 2003, defendant lived with his elderly parents, Louise Madures ("Ms. Madures") and John Madures, Sr. ("Mr. Madures"). On 19 October 2003, Ms. Madures called the Rowan County Sheriff's Department ("Sheriff's Department"). She asked whether Deputy Scott Flowers ("Deputy Flowers") was on duty because she wanted

to talk with him about her son's probation. Deputy Flowers was patrolling another area at that time and was unable to respond to Ms. Madures when she called. After Ms. Madures called the Sheriff's Department, her brother, Tim Hamilton ("Hamilton"), came to Ms. Madures' home and took her to her sister's house. Mr. Madures remained at the Madures' house.

The Sheriff's Department communications dispatcher contacted Deputy Flowers and notified, him that Ms. Madures had called and wanted him to come to the Madures' residence. Deputy Flowers attempted to call Ms. Madures on his cell phone several times, but the Madures' telephone line was busy. Deputy Flowers contacted the dispatchers to conduct an "emergency break-in" to the Madures' phone line, but the dispatchers told Deputy Flowers "that there was nothing on the line, no talking, nothing could be heard in the background." Deputy Flowers became concerned for Ms. Madures' safety, contacted his superior officer, and drove to the Madures' residence. Deputy Flowers testified that he was familiar with the Madures' residence and had concern for Ms. Madures because he previously had responded to a domestic disturbance at the Madures' residence on 21 July 2003.

When Deputy Flowers arrived at the Madures' residence on 19 October 2003, he parked in the driveway and saw defendant outside wearing underwear and a t-shirt. Defendant ran into the house, and Deputy Flowers took cover behind a tree near the door to the house. Deputy Flowers did not have his weapon drawn, but took cover because he did "[n]ot know[] what was going on[] with [defendant's] running in the house[.]" Deputy Flowers announced his presence to defendant and asked to speak to Ms. Madures. Defendant cursed at Deputy Flowers, told him that Ms. Madures had gone to her sister's house, and demanded that Deputy Flowers get off of the property. By this time, Sergeant Neil Goodman ("Sergeant Goodman") also had arrived at the Madures' residence, and Deputy Flowers asked Sergeant Goodman to go to Ms. Madures' sister's home to see whether Ms. Madures was there.

Sergeant Goodman found Ms. Madures at her sister's house; Hamilton drove Ms. Madures back to the Madures' residence. She asked the officers to go inside to retrieve (1) her pocketbook, (2) Mr. Madures, and (3) Mr. Madures' medication. Deputy Flowers asked Ms. Madures whether, if necessary, the officers could make a forced entry into the residence; she responded affirmatively. Deputy Flowers testified that he and Sergeant Goodman positioned themselves on each

side of the door and asked defendant to open the door. Defendant refused, continued to curse the officers, claimed that they were going to arrest him, and demanded that they leave the property. Deputy Flowers asserted that they only wanted to retrieve Ms. Madures' pocketbook, Mr. Madures, and his medication, and that the officers then would leave.

Upon defendant's subsequent refusal, Deputy Flowers and Sergeant Goodman drew their weapons, re-announced their intentions, kicked in the door, and forced entry into the residence. Deputy Flowers immediately saw Mr. Madures sitting in the living room and informed him that the officers were there to escort him to Ms. Madures who was waiting outside. Mr. Madures "slowly got up from his chair and began to shuffle across the floor." Deputy Flowers explained that Mr. Madures "did not take regular steps. He slid his feet across the floor." As Deputy Flowers began to escort Mr. Madures outside, he saw defendant step into the doorway across the room— approximately fifteen feet away—and raise a rifle in the officers' direction. Deputy Flowers took cover behind the television near the doorway, but did not shoot defendant because he was concerned that Mr. Madures would be caught in the crossfire.

Once Mr. Madures was outside safely, the officers exited the residence. Sergeant Goodman escorted Mr. Madures to where Ms. Madures was located while Deputy Flowers took cover behind a tree and guarded Mr. Madures and Sergeant Goodman. Defendant then went out onto the porch and said to Deputy Flowers, "Step on out. We'll finish it right here. You're not that good of a shot. It'll all end right here."

The Special Response Team was called to assist in defendant's apprehension and arrest. Defendant subsequently ran out of the back of the residence and into his "shop," a shed behind the house, where he later was arrested.

Defendant testified that he had fallen asleep watching television when Ms. Madures went to her sister's house. He had awoken and was getting something to eat when Deputy Flowers first inquired as to whether Ms. Madures was home. After defendant told the deputy that she was at her sister's, defendant returned to watching television. Approximately one-half hour later, defendant heard a crash at the front of the house, jumped out of bed, picked up his rifle, and entered the hallway pointing the rifle at the suspected intruders—Deputy Flowers and Sergeant Goodman. Once defendant saw Mr. Madures

escorted to Ms. Madures' location, defendant returned inside and expected that the officers would leave the premises. Defendant then went out to his shop for several hours and was arrested when he exited the shop.

On 2 October 2007, a jury returned verdicts finding defendant guilty of two counts of assault with a firearm upon a law enforcement officer and two counts of resisting a public officer. On the same day, the trial court entered judgment and commitment orders upon the jury's verdicts. Defendant appeals.

On appeal, defendant first contends that the trial court erred by admitting evidence pursuant to North Carolina Rules of Evidence, Rule 404(b) because the evidence was both irrelevant and highly prejudicial. Defendant asserts that the trial court's purported error entitles him to a new trial. We disagree.

[1] We review a trial court's evidentiary rulings for abuse of discretion. *State v. Hagans*, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006) (citing *State v. Boston*, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004)). " 'A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)).

Generally, all relevant evidence is admissible pursuant to North Carolina Rules of Evidence, Rule 402. N.C. Gen. Stat. § 8C-1, Rule 402 (2007). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). However, even relevant evidence is subject to exclusion "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). Furthermore, Rule of Evidence 404(b) provides in relevant part

that [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). Our Supreme Court has explained that the rule is

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). "The list of permissible purposes for admission of 'other crimes' evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995) (citing *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). Our Supreme Court also has explained that

> [e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174-75 (1990) (*quoting United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

Defendant argues that the trial court erred by admitting statements (1) related to defendant's 21 July 2003 arrest, and (2) made by defendant while he was being transported from his home to jail on 19 October 2003.

At trial, evidence was admitted of Ms. Madures' 911 call to report a domestic disturbance on 21 July 2003, defendant's subsequent guilty plea for communicating threats, and his subsequent probation. The trial court did not abuse its discretion by admitting this evidence because it completed the picture for the jury. Deputy Flowers explained that he was familiar with the Madures' residence because he had responded to the 21 July 2003 domestic disturbance. The domestic disturbance resulted in defendant's guilty plea for communicating threats, and defendant's guilty plea resulted in his being placed on probation. Ms. Madures ·called Deputy Flowers on 19 October 2003 to discuss the terms of defendant's probation. Deputy

Flowers stated that on 21 July 2003, he asked Ms. Madures to call the Sheriff's Department if she needed help. When Ms. Madures called 911 asking for Deputy Flowers on 19 October 2003, he was unable to respond to take her call, but he attempted to return her call soon after. When he attempted to contact Ms. Madures several times via cell phone without success, he requested that the dispatchers conduct an emergency break-in on the Madures' telephone line. After the emergency break-in failed, Deputy Flowers became concerned for Ms. Madures in light of his prior experiences and communications with her, and therefore, he drove to the Madures' residence leading to the events at issue in the case *sub judice*.

Therefore, we hold that the trial court properly admitted this evidence in order to provide a complete picture for the jury. *See Agee*, 326 N.C. at 548, 391 S.E.2d at 174-75. Furthermore, on the facts of the case *sub judice*, we discern no violation of Rule 403 of the North Carolina Rules of Evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

The trial court also admitted evidence of defendant's statements made after his arrest, during transportation from his home to jail on 19 October 2003. As with the evidence related to the 21 July 2003 domestic disturbance and its subsequent causal history, we hold that the trial court did not abuse its discretion by admitting defendant's statements made after his arrest. The transcript of the recording of defendant's statements made subsequent to his arrest contains the following relevant colloquy:

DEPUTY FLOWERS: Get in the seat, John.

[DEFENDANT]: Yeah, thanks a lot[,] Scott.

. . . .

DEPUTY FLOWERS: John, I've got four warrants for your arrest.

[DEFENDANT]: Kiss my ass!

DEPUTY FLOWERS: Four for resisting (INAUDIBLE) public officer—

[DEFENDANT]: Four? Hell, why not forty!

DEPUTY FLOWERS: Two—two for assault on a law enforcement officer while pointing a firearm. (INAUDIBLE) probable cause (INAUDIBLE) assault

[DEFENDANT]: (talking over officer) Yeah, yeah, yeah, yeah, yeah, yeah. . . .

. . . .

DEPUTY FLOWERS: (INAUDIBLE) an officer was performing a duty of his office to assist John Madures, Sr. in leaving his residence. He resist—you resisted C.F. Flowers, G.—G.M. Goodman, ah,—

[DEFENDANT]: (talking over officer) Do you like to play cop? Are you feeling good? You got a big hard on now because you're a nice guy. Suck my ass you fat son of a bitch!

Deputy Flowers then informed defendant of his *Miranda* rights, and defendant responded, "You fucking with me—you—you[.]"

As the officers were conducting business outside of the car, the following exchange occurred:

[DEFENDANT]: I've been nice to y['a]ll, (INAUDIBLE) but I'm about finished with it.

. . . .

[DEFENDANT]: Yeah, we playing ain't we? We playing now? Alright.

. . . .

(banging noise inside of car)

DEPUTY FLOWERS: (talking outside of car) Oh, damn it he (INAUDIBLE). Don't do it! That would be stupid. (back inside of car) John, there will be an additional charge for damage to county property.

[DEFENDANT]: Well, good for you then.

Deputy Flowers explained that the banging noise inside the car was defendant's kicking out the rear-passenger's window of the deputy's vehicle. Subsequently, while en route to the jail, defendant asserted to Deputy Flowers, "[Y]ou had it in for me, you fat bastard."

Notwithstanding defendant's contentions, the recording reveals evidence that has a tendency to make defendant's prior assaults upon and resistance to the officers more probable, and defendant's statements tend to show both his intent and his absence of mistake or accident in the commission of the offenses charged against him. *See*

N.C. Gen. Stat. § 8C-1, Rules 401 and 404(b) (2007). In addition, the trial court allowed the recording to be played for the jury, but the court required the jury to exit the courtroom to prevent the jury from hearing portions of the recording which the court, in its discretion, previously had determined to be unfairly prejudicial or irrelevant. *See* N.C. Gen. Stat. § 8C-1, Rules 402 and 403 (2007); *Hagans*, 177 N.C. App. at 23, 628 S.E.2d at 781.

Accordingly, the record demonstrates that the trial court's decisions to admit the foregoing evidence were reasoned determinations, and we hold the trial court did not abuse its discretion in admitting statements related to defendant's 21 July 2003 arrest or redacted statements made by defendant while he was being transported from his home to jail on 19 October 2003. *See id.*; *White*, 340 N.C. at 284, 457 S.E.2d at 852-53.

[2] Next, defendant contends that Judge Holshouser erred by failing to recuse himself *ex mero motu* after realizing that he previously had met defendant's family during negotiations between the Madures family and a gas company for an easement on the Madures' real property. Notwith-standing defendant's contention, defendant made no motion to recuse. Accordingly, we dismiss defendant's argument because it has not been preserved for appellate review. *State v. Key*, 182 N.C. App. 624, 632-33, 643 S.E.2d 444, 450-51 (2007) (citing *State v. Love*, 177 N.C. App. 614, 627-28, 630 S.E.2d 234, 243 (2006) ("There was no request, objection or motion made by defendant at trial and therefore the question was not properly preserved for appeal.") and N.C. R. App. P. 10(b)(1)), *disc. rev. denied*, 361 N.C. 433, 649 S.E.2d 398 (2007).

For the reasons set forth above, we hold that the trial court did not err either by admitting relevant evidence pursuant to North Carolina Rules of Evidence, Rule 404(b) after properly balancing its probative value pursuant to Rule 403. In addition, pursuant to our controlling precedent, we dismiss defendant's argument relating to the trial court's decision not to disqualify itself *ex mero motu*.

No error in part; Dismissed in part.

Judges McGEE and HUNTER, Jr., Robert N. concur.